Argued April 15; affirmed June 17, 1941

# LEE *v.* MEIER & FRANK CO.

(114 P. (2d) 136)

Before KELLY, Chief Justice, and RAND, LUSK, BAILEY and ROSSMAN, Associate Justices.

*P. R. Harris*, of Portland (A. F. Knight and Goldstein & Harris, all of Portland, on the brief), for appellant.

*John F. Reilly*, of Portland (Reilly & Davidson, of Portland, on the brief), for respondent.

ROSSMAN, J. This is an appeal from a judgment of the circuit court in favor of the defendant based upon a ruling which sustained the defendant's motion for an involuntary nonsuit. The complaint alleges that the defendant maintained a stack of pillows in its store in such a negligent manner that one of them fell to the floor of the aisle where it tripped the plaintiff's decedent while she, as a patron of the store, was walking in the aisle. According to the complaint, the deceased, Katie F. Anderson, sustained injuries which shortly caused her death. The complaint charges that (1) the defendant's pillow rack was not of sufficient size; (2) the rack was not provided with a sufficient guard to prevent pillows from falling into the aisle; and (3) the defendant piled pillows in the rack "at a careless and negligent height, manner and arrangement." The answer denies all averments of negligence.

November 19, 1937, Mrs. Katie F. Anderson, plaintiff's decedent, accompanied by Mrs. Anna K. Hurt, a friend, went in the elevator to the fifth floor of the defendant's store. When they stepped out of the elevator there was directly in front of them and plainly in sight the rack of pillows. The pillow rack was constructed around one of the pillars which supports the sixth floor. The base of the rack was a platform 10 or 12 inches above the floor and 4 or 5 feet square. Around the platform was a protective railing 8 or 9 inches in height. The top of this railing was 21½ inches above the floor. The pillows were about 15 inches square and about 6 inches deep. According to Mrs. Hurt, "the pillows on that rack were piled unusually high." Again referring to them, she said that they "were piled up some two or three pillows high along the edge there,

and from that on up to between 4 and 5 feet at the post.''

Mrs. Anderson, at the time of her injury, was 70 years of age. When she and Mrs. Hurt left the elevator they walked directly ahead with the intention of reaching some department of the store beyond the pillows. Adjacent to the pillow pile the aisle was narrow, and accordingly Mrs. Hurt walked slightly in front of Mrs. Anderson. We now quote from Mrs. Hurt's description of the accident: ''* * * and all at once she (Mrs. Anderson) cried out, 'Oh, Aunty Em,' and I turned around and she was just falling to the floor, and she said, 'What is that under my foot; what did I stumble over?' And I looked at her feet and just at that moment a woman came up on the other side to help me pick her up, and she picked up a pillow from under her feet and threw it up on the rack.'' According to Mrs. Hurt, the woman just mentioned was a customer. She apparently departed at once. Mrs. Hurt had not seen the pillow before the fall occurred, and no other witness mentioned it. The record does not disclose how long it had been upon the floor nor how it happened to be there. Likewise, the record does not indicate whether any customer was examining the pillows at the time of Mrs. Anderson's and Mrs. Hurt's approach.

■ In support of her contention that the evidence above reviewed indicated negligence upon the defendant's part, the plaintiff cites and relies upon *Kroger Grocery & Baking Co. v. Diebold,* 276 Ky. 349, 124 S. W. (2d) 505; *Etta Rogers v. J. C. Penney Co.,* 127 Neb. 885, 257 N. W. 252; *Chalmers v. Great Atlantic & Pacific Tea Co.,* 172 Md. 552, 192 Atl. 419; *Saunders v. Williams & Co.,* 155 Or. 1, 62 P. (2d) 260; *Hoveds-*

*gaard v. Grand Rapids Equipment Corp.*, 138 Or. 39, 5 P. (2d) 86; *Lombardi v. F. W. Woolworth Co.*, 303 Mass. 417, 22 N. E. (2d) 28; *Johnson v. Hoffman*, 132 Or. 46, 284 P. 567; *Sears, Roebuck & Co. v. Peterson*, 76 Fed. (2d) 243; *Fox v. Ben Schechter & Co.*, 57 Ohio App. 275, 13 N. E. (2d) 730; *Terminal Railroad Ass'n v. Farris*, 69 Fed. (2d) 779; *O'Bauer v. Katz Drug Co.*, (Mo. App.) 49 S. W. (2d) 1065; *Hodge v. Weinstock, L. & Co.*, 109 Cal. App. 393, 293 P. 80; and annotation in 100 A. L. R. 742. Additional collections of decisions may be found in the following annotations: 58 A. L. R. 136; 46 A. L. R. 1111; 43 A. L. R. 866; and 33 A. L. R. 181. Of the authorities cited by the plaintiff *Terminal Railroad Ass'n v. Farris* has no application to the duty owed by a storekeeper to his patron. We shall, therefore, exclude it from our further discussion. The other decisions cited by the plaintiff, as well as those collected in the defendant's brief, deem a customer in a mercantile establishment an invitee. They hold that the owner owes to his customers the duty to use the care of a reasonably careful and prudent person to keep the passageways used by his customers in a reasonably safe condition so that they will not be exposed to danger unnecessarily. In stating that rule, many of the decisions add by way of caution that the storekeeper is not an insurer of his customers' safety. In all of the decisions above cited, with the exception of *Rogers v. J. C. Penney Co.*, the customer sustained his injury through a fall which resulted from stumbling over an object in the aisle or slipping upon a foreign substance on the floor. In the Rogers case the customer fell down a concealed stairway. The decisions hold that a storekeeper is not liable unless he placed the object or slippery substance in the aisle, or, if some-

one else placed it there, they hold that he is not liable unless he had actual knowledge of its presence or constructive notice concerning it arising out of its presence in that place for a sufficiently long time. Since the law exacts of the storekeeper nothing more than the exercise of reasonable care, the patron can not expect to find the aisle always free from danger; therefore, he must employ due care also. But, since this appeal presents no issue of contributory negligence, we shall say no more upon that subject. The legal principle which we stated in the above lines is expressed in somewhat amplified form in Restatement of the Law, Torts (Negligence), § 343, thus:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

As already indicated, there is no evidence in the record which shows that the defendant had any knowledge of the pillow's presence in the aisle before Mrs. Anderson was tripped up by it. In *Morrison v. Pacific Northwest Public Service Co.*, 146 Or. 225, 30 P. (2d) 344, a judgment for the plaintiff, based upon charges that the defendant had negligently permitted

a slippery substance to remain upon the floor of one of its street-cars, thereby causing the plaintiff to slip and fall, was reversed. Mr. Justice BAILEY, in announcing the opinion of the court, said:

"* * * Before the defendant can be held liable for the injuries suffered by the plaintiff, it is incumbent on plaintiff to prove that defendant's servant, the motorman-conductor, knew that the plum was on the floor of the vestibule prior to plaintiff's injury and failed to remove it, or that it had been there a sufficient length of time for the jury to infer that the defendant's employee knew or should have known of its presence. This the plaintiff failed to prove."

*Goddard v. Boston & M. R. Co.*, 179 Mass. 52, 60 N. E. 486, is interesting on account of its brevity and direct application to the issue before us. The entire decision follows:

"Action by Wilfred H. Goddard against Boston & Maine Railroad Company for personal injuries received by falling upon a banana skin lying upon the platform at defendant's station at Boston. The evidence showed that defendant was a passenger who had just arrived, and was about the length of the car from where he alighted when he slipped and fell. There was evidence that there were many passengers on the platform. Verdict directed for defendant, and plaintiff excepts. Exceptions overruled.

"HOLMES, C. J. The banana skin upon which the plaintiff stepped and which caused him to slip may have been dropped within a minute by one of the persons who was leaving the train. It is unnecessary to go further to decide the case.

"Exceptions overruled."

■ It is needless to review the authorities further. All employed the legal principle stated in preceding paragraphs. The evidence fails to show that the de-

fendant was guilty of any negligence. The first assignment of error, therefore, lacks merit.

The second, being the last, assignment of error is based upon rulings which sustained objections to questions concerning the pillow display propounded by plaintiff's counsel to three of his witnesses, Mrs. Van Kleek and Mrs. Lee, daughters of the deceased, and a Mrs. Tate. None of the three was in the defendant's store on the day of the accident. The same question was put to all three, but to Mrs. Tate there was submitted an additional question which we shall shortly quote. The nature of the common question will be sufficiently indicated by a review of what occurred when it was submitted to Mrs. Van Kleek. She had testified that "ten days or a week, two weeks, somewheres right in there," after the accident she visited the defendant's pillow section. She then answered in the affirmative a question which inquired whether she saw "the display of pillows approximately in the same condition as testified to by Mrs. Hurt." Then she was asked, "Will you state what the condition of the display was at that time." The defendant objected on the ground of immateriality. Before a ruling was made the presiding judge discussed with counsel, both in the courtroom and in chambers, the materiality of the information sought. Then the objection was sustained. The following is plaintiff's offer of proof:

"Mrs. Van Kleek would testify, if permitted to answer, that at the time referred to by her, she observed pillows in the aisle alongside the pillow display and that she likewise observed customers in handling the pillows that extended above the level of the top of the railing in their handling,—she observed,—to dislodge the pillows and that the pillows would fall from the pile or heap on to the floor and in the aisle

and that whenever a customer would reach for a pillow, other pillows would be dislodged and fall.''

We come now to Mrs. Lee. She testified that she visited the pillow section the day before the accident. The offer of proof concerning her proffered testimony was substantially the same as that made concerning Mrs. Van Kleek's. Mrs. Tate, before mentioning any occasion whatever, was asked, ''And I will ask you if it isn't a fact that you yourself stumbled over pillows on the fifth floor?'' To that question an objection was sustained. Then the witness mentioned a visit which she had made to the defendant's store about a week before Mrs. Anderson's injury. Possibly that is the occasion to which the question referred. She said that upon that occasion the pillows were piled in the rack to a height of ''I would say three or four feet, something like that.'' Next, she was asked, ''And did you notice the manner in which they were being handled, or—by the customers looking at the display?'' An objection of immateriality was made and sustained. The following is the offer of proof:

''Mrs. Tate would testify, if permitted, that at the time she referred to she actually did stumble over and fall over a pillow that was in the aisle alongside the pillow display and she would further testify that on numerous occasions she observed the customers, in their handling of the pillows, as maintained in the display, to dislodge them as they were inspecting the pillows or taking hold of any of the pillows, and that the pillows when so dislodged would fall in the aisle alongside the pillow display.''

The plaintiff's brief, in arguing in support of this assignment of error, states:

''The real issue in this case was whether or not the pillow display, as so maintained by the defendant

itself, was dangerous and unsafe. Accordingly, testimony was offered for the purpose of showing that the pillows were habitually piled on an unsupported and unenclosed rack in such a way as to naturally or probably fall upon the floor; and that on previous occasions pillows had frequently fallen in the aisle, and that customers stumbled thereover. In short, that the specific cause of the injuries to Mrs. Anderson and her resulting death was not a single, isolated happening but was due to a continuing course of negligent action on the part of the defendant in maintaining the display in the manner that it did, and that, therefore, the defendant could reasonably have apprehended and foreseen the occurrence of such accidents.''

It will be observed from the statement just quoted that the proffered testimony was not offered for the purpose of showing that the defendant (1) placed pillows on the floor; (2) permitted any to remain in the aisle after having notice of their presence there; or (3) failed to inspect the area from time to time to make sure of its safe condition. It is altogether reasonable to infer from the offers of proof that none of the three witnesses saw a pillow remain on the floor for an appreciable length of time. How the pillow over which Mrs. Tate stumbled happened to be upon the floor, no one said; it may be that it fell only an instant before she approached it.

■■■ It is evident from the statement quoted from the plaintiff's brief that she believes that a pile of pillows arranged in such a manner that an upper pillow may fall if a lower one is removed renders the pile dangerous. The evidence indicates that the pillow pile had been maintained at the place where it was at the time of Mrs. Anderson's mishap for a long time, and that occasionally other merchandise had been displayed upon the same rack. If a pile of pillows four or five

feet high, resting upon a firm base and leaning in the rear against a solid post, is an object of danger, we shudder to think of the danger that lurks in every self-service grocery store with its rows of canned goods piled high. We recall that the base of the defendant's rack was surrounded by a guard rail several inches high. It is a matter of common observation that every store, in order to conserve space, arranges its merchandise in piles. The utility of the arrangement is great and the possibility of harm to anyone is negligible. Such displays and arrangements are commonly regarded as free of danger. A pillow, fluffy and light in weight as it is, is almost harmless compared with the goods upon the counters, tables and display racks of grocery, crockery, variety and hardware stores. Everyone knows that when objects are piled on top of one another the upper one may tumble down if jarred, unless a means can be found of overcoming the law of gravity. We can not conceive how such an arrangement could support a charge of negligence unless the merchant permitted objects to remain in the common passageways after he had received timely notice of their presence there, or failed to make visits at reasonable intervals to the place so as to acquaint himself with its conditions. But all of this brings us back to the section we quoted from the Restatement and the authorities cited by the plaintiff. We are satisfied that the testimony which the circuit court rejected would not have indicated negligence upon the defendant's part had it been received.

Lest omission to mention the subject be misunderstood, we add that we are by no means satisfied that the conditions present at the pillow pile at the time of the visits made to it by Mrs. Lee, Mrs. Tate and Mrs.

Van Kleek were similar to the conditions existing at the time of Mrs. Anderson's mishap. It will be recalled that the circuit judge sustained the objection of immateriality after he had a conference with counsel. The ascertainment of similarity of conditions is one which ordinarily may be safely intrusted to the discretion of the trial judge: Wigmore on Evidence (3d), § 444.

We are satisfied that the second assignment of error possesses no merit.

The judgment of the circuit court is affirmed.