Argued and submitted November 20, 1992, vacated in part; reversed and remanded in part; otherwise affirmed May 4, petition for review denied August 16, 1994
(319 Or 625)

Jennifer Johnson FRANCIS,
*Respondent,*

*v.*

EOFF ELECTRIC COMPANY,
an Oregon corporation,
and Joseph I. Eoff,
*Appellants,*

*and*

John H. JOHNSON,
*Defendant.*

(9010-06584; CA A72621)

873 P2d 1110

Peter A. Ozanne argued the cause for appellants. With him on the briefs was Schwabe, Williamson & Wyatt.

Robert D. Bulkley, Jr., argued the cause for respondent. With him on the brief were David B. Markowitz and Markowitz, Herbold, Glade & Mehlhaf, P.C.

Before Richardson, Chief Judge, and Deits and Riggs,* Judges.

DEITS, J.

---

* Riggs, J., *vice* Durham, J.

## DEITS, J.

Plaintiff brought this action against her stepfather (Eoff), her brother (Johnson), and Eoff Electric Company, which is the family's closely held corporation. She stated numerous claims and defendants stated numerous counterclaims. Eoff is chairman and chief executive officer of the corporation. Johnson is its president and plaintiff was corporate secretary from December, 1980, until her resignation in August, 1990. Plaintiff, Eoff and Johnson are the sole shareholders of the corporation. Plaintiff's husband (Francis) held a full-time management position with the company from 1980 until his resignation in January, 1989.

In 1981, the corporation and the individual parties to this action entered into a "restrictive stock transfer agreement." Paragraph 7 of the agreement provides:

> "If [Johnson] shall cease to be employed by the Corporation or if neither [plaintiff], nor [Francis], are employed by the Corporation, all of his or her stock must be sold by said Stockholder and purchased by the Corporation, or if the Corporation notifies the other Stockholders that it will not purchase the stock, then by the other Stockholders for the purchase price determined under paragraph 5.3 above and at the terms set by subparagraph 6(b) above."

Paragraph 5.3 provides, as relevant:

> "If the stock is tendered * * * the purchase price shall be the book value of the stock. Book value shall be the amount shown on the accounting records or financial statements of the Corporation at or as of the end of the fiscal year of the Corporation preceding the giving of notice of tender or the occurrence of the event or circumstances requiring tender, whichever first occurs. The determination of book value shall be made by the firm of independent accountants then regularly employed by the Corporation. The accountants' determination of book value shall be final and binding on all parties."

Under paragraph 6(b):

> "If the sale is at a price determined under paragraphs 5.1 or 5.3, the full amount shall be paid in cash at the time of closing or, at the election of the purchaser, an amount equal to not less than 10 percent of the purchase price shall be

payable in cash at the closing, with the balance payable in 10 equal annual installments * * *."

Relations among the parties deteriorated and, in August, 1990, Eoff and Johnson, a quorum of the board of directors, voted to purchase plaintiff's shares under the installment option, valued as of the end of the 1988 fiscal year. Although plaintiff did not resign as secretary of the corporation until 1990, and contends that she was therefore entitled to the value of her shares at the end of the 1989 fiscal year, defendants contest that view. They reason that Francis departed from the corporation's employ in 1989, and plaintiff herself had either never been "employed by the Corporation" or had so reduced her involvement before she formally resigned as an officer that she had ceased to be employed before 1990.

In the first of plaintiff's claims that is involved in this appeal, she asserted that defendants breached the agreement by using the 1988 rather than the 1989 valuation date, and sought specific performance of the agreement in that and other particulars. The trial court agreed with plaintiff that the term "employed by the Corporation," in the context of the agreement, applied to plaintiff as long as she was the corporate secretary. It therefore granted her motion for partial summary judgment on that issue and on her contention that her shares should be valued as of the end of 1989.

After a trial to the court, the court made a finding of fact concerning the value of the shares on December 31, 1989, and ordered specific performance of the agreement, requiring the corporation to purchase plaintiff's shares through an initial payment for which a money judgment was entered and, thereafter, in annual installments. The only other ruling that is at issue in this appeal is the trial court's dismissal of defendants' legal malpractice counterclaim against plaintiff, an attorney, as a sanction under ORCP 17. The malpractice claim was based on plaintiff's alleged involvement in the review or preparation of certain documents.

■ Defendants appeal. In their first assignment, they argue that "employed by the Corporation" is either an ambiguous term or unambiguously does not apply to plaintiff as the secretary of the corporation. Defendants emphasize that,

unlike Johnson and Francis, plaintiff was not actively involved in day-to-day corporate management, and thus did not come within the intended meaning of the word "employed" in the agreement. Defendants assert:

> "Plaintiff argues that the words in Paragraph 7 of the Agreement, 'employed by the Corporation,' are unambiguous as applied to Plaintiff, and should be interpreted to mean 'use of her services as corporate secretary and director' as a matter of law. Plaintiff concedes that Johnson, her brother, and Francis, her husband, were actively involved in the Company by employment for compensation at the time of the Agreement, and that she was not actively involved. Plaintiff fails to explain why the parties to the Agreement would use one term, 'employed by the Corporation,' with respect to three individuals with such different relationships with the Company. The only reasonable explanation is that, by use of that one term, the parties intended Francis to serve as Plaintiff's surrogate for the purposes of ensuring Plaintiff's active involvement in the business and promoting continuity and stability in management of the Company. Otherwise, there was no need to use 'employed by the Corporation' instead of 'continues to be corporate secretary' with reference to Plaintiff, or to mention Francis in the Agreement at all." (Footnotes omitted.)

Plaintiff argues that the Oregon Corporations Act, in effect at the time of the agreement, defined "employees" as including corporate officers and that, in the absence of anything to the contrary in the agreement, that definition controls. *See former* ORS 57.004(16). Plaintiff also contends that the parties to the agreement intended to give the term "employee" a broad meaning that was meant to include corporate officers.

Defendants labor strenuously to find an ambiguity in the agreement that could create a question of fact as to its intended meaning and render summary judgment inappropriate. However, they focus their efforts on the phrase "employed by the corporation," and do not give adequate attention to the context of the agreement as a whole.

Defendants' thesis that the parties intended to make plaintiff's stock sale obligation dependent on whether Francis, rather than plaintiff herself, was a corporate employee is belied by the fact that paragraph 7 very clearly

refers to the employment status of plaintiff, as well as Francis, in the disjunctive. Defendants assert that, if its understanding were not correct, there would have been no reason "to mention Francis in the agreement at all." However, if that understanding were correct, there would have been no reason for paragraph 7 to mention *plaintiff's* employment status at all. Of the three persons mentioned in paragraph 7, plaintiff is the *only* one whose relationship to the corporation, other than as a stockholder, is specified in the agreement itself. She signed the attestation of the agreement in her capacity as secretary. Furthermore, the agreement provides that it is "governed by the law of Oregon," under which, at the time that the agreement was executed, corporate officers were corporate employees. *See former* ORS 57.004(16).

Defendants' argument based on the use of the same term to apply to each of the three persons named in paragraph 7, seems to us to call for the opposite conclusion from the one defendants would reach. If the agreement was meant to differentiate among the three on the basis of their levels of activity in their corporate positions, as defendants maintain, it would not have used essentially the same terminology to refer to all three.

We conclude that, read in the context of the entire agreement, the term "employed" unambiguously included plaintiff in her capacity as corporate secretary. We agree with the trial court that plaintiff remained employed by the corporation until she resigned as secretary in 1990. The court did not err by granting the motion for partial summary judgment.[1]

■    Defendants make two other assignments of error that raise three related contentions: (1) the trial court lacked authority to make a finding concerning the December, 1989, book value of the shares, when the agreement provides that

---

[1] Defendants also argue that there is a question of fact as to whether the reduction in plaintiff's activities as secretary and the elimination of her remuneration before 1990 mean that she abandoned the position or was constructively removed before that time. We disagree. Plaintiff neither resigned nor was removed from the position until August, 1990. Defendants' notion that there was some form of constructive termination finds no support in the record, even assuming that its legal premises are correct.

the corporation's accounting firm is to make that determination; (2) the court erred by requiring the corporation to purchase plaintiff's shares, when the agreement gives it the option to forego that right, and to require the other shareholders to make the purchase instead; and (3) in the alternative, the court could not require the corporation to follow an installment purchase approach, when the agreement allows it a lump sum option. We agree with the first point, disagree with the second, and plaintiff stipulates to the third.

Defendants are correct that the agreement provides the method by which value is to be determined. It specifies that the corporation's accountants, not a court, are to make the determination. Accordingly, it is necessary for that determination to be made before further judicial proceedings, if any, regarding the valuation can take place. It is also true that the agreement provides the corporation with the option that defendants describe as to whether to purchase the shares or to place the purchase obligation on the other shareholders. However, unlike the 1989 book value assessment, which the accountants had had no opportunity to perform before the court made its ruling that 1989 was the appropriate valuation year, the corporation has already made its election. The trial court acted within the scope of its equitable powers in requiring the corporation to perform the agreement in the manner that it had already chosen and notified plaintiff that it would perform. Although the same might be said of the corporation's choice of the installment over the lump sum approach, we accept plaintiff's stipulation that the judgment may be modified to allow the corporation to choose again.

■  In their remaining assignment, defendants assign error to the granting of plaintiff's ORCP 17 motion and to the sanction of dismissal of the legal malpractice counterclaim. Whatever else the trial court may have done or considered in arriving at that ruling, the linchpin of its reasoning was Eoff's negative response to a question in his deposition inquiring whether he "perceived" plaintiff to have been acting as defendants' lawyer in connection with the events alleged in the counterclaim. The court apparently concluded that the claim was "meritless," because one cannot commit legal malpractice if she is not performing legal services.

Defendants argue that what the trial court essentially did was grant summary judgment, based on Eoff's testimony, in the guise of deciding a motion under ORCP 17. We agree. The court's determination could not have been made but for its assessment that Eoff's testimony conclusively established the absence of a material element of the claim for legal malpractice and, therefore, the absence of a disputed question of material fact. Whether or not that would have been a correct ruling had a motion for summary judgment been before the court, none was. The court had no authority to make that ruling under ORCP 17. *See Hendgen v. Forest Grove Community Hospital*, 98 Or App 675, 780 P2d 779 (1989).

Award of money damages for value of shares vacated; reversed and remanded for an amended judgment of specific performance not inconsistent with this opinion; dismissal of fifth counterclaim reversed and remanded; otherwise affirmed.