Argued and submitted July 30, 2003, affirmed January 28, petition for review denied April 27, 2004 (336 Or 657)

Eleanor GLORIOSO,
*Appellant,*

*v.*

Greg NESS
and Terry Ness,
*Respondents.*

C010834CV; A118516

83 P3d 914

J. Randolph Pickett argued the cause and filed the briefs for appellant.

Michael A. Lehner argued the cause for respondents. With him on the brief was Lehner & Rodrigues, PC.

Before Edmonds, Presiding Judge, and Schuman and Ortega,* Judges.

_____
* Ortega, J., *vice* Kistler, J., resigned.

ORTEGA, J.

## ORTEGA, J.

Plaintiff appeals after the entry of summary judgment in favor of defendants in this "trip-and-fall" case. We conclude that the evidence is legally insufficient to impose premises liability against defendant property owners, even viewing that evidence most favorably to plaintiff and assuming that defendants are held to the standard of care owed to an invitee. Accordingly, we affirm.

Plaintiff, a professional photographer, was hired to photograph a wedding at the home of defendants, the groom's mother and her husband. Plaintiff arrived at defendants' residence before the ceremony and began to explore the area where the wedding was to take place, which included defendants' back deck. The deck extended straight out from the rear of the house and was accessible from a door placed approximately at the center of the deck. Plaintiff first walked the full length of the deck along the house, observing steps leading downward on the left side of the deck as well as chairs on a lower level deck on the left side. She then retrieved her camera from inside the house and walked out on the deck toward an arch that was set up for the ceremony. On her way to the arch, plaintiff fell on a step and was injured.

Defendants' deck had two levels, separated by a step of five to six inches in height that ran most of the length of the deck, parallel to the house. The deck was constructed of two-by-four decking material. At the point where plaintiff fell, the deck boards ran parallel to the step on both the upper and lower levels. Along the step ran a facing board, or "riser." It was a board of the same appearance and dimensions as the deck boards but was turned on its side. Its top edge was flush with the top of the step, giving an appearance of a narrower board running along the edge of the step. The decking material was of the same color and appearance on both the upper and lower levels.

The arch that plaintiff was attempting to reach was located on the lower level, though plaintiff testified that the arch did not appear to be on a lower level. Before falling, plaintiff was "looking down, but * * * looking at where [she

was] walking to, towards the arch." The incident occurred around 3:00 p.m. and, although the weather may have been overcast, plaintiff testified that she could see the decking surface and that the lighting had "nothing to do with" her fall. The deck did not appear to be wet, nor was plaintiff aware of anything slippery on the surface. The deck had no other flaws but rather was, in plaintiff's words, in "gorgeous" condition. Although the deck was cluttered with decorations and other items related to the wedding, plaintiff testified that her visibility was unobstructed.

Plaintiff's operative complaint alleged, in pertinent part, that defendants were negligent in the following ways:

"(a)    In failing to maintain reasonably safe premises in that the deck had a step downward, at the area where plaintiff fell, that was difficult to see because of the similarity of appearance of both the upper and lower portions of the step;

"* * * * *

"(c)    In failing to warn * * * plaintiff * * * about the aforementioned dangerous condition at a time when defendants knew, or in the exercise of reasonable care should have known of the presence of the hazard * * *;

"[(d)]    In failing to provide a handrail to enable * * * plaintiff * * * the ability to negotiate the aforementioned step in safety * * *."[1]

Defendants moved for summary judgment, contending that the undisputed facts established that (a) plaintiff was a *licensee* (*i.e.*, one who comes on the premises for her own purposes with the consent of the possessor[2]), rather than an *invitee* (*i.e.*, one who comes on the premises on business that concerns the occupier, with the occupier's express or implied invitation[3]), with the consequence that defendants'

---

[1] An additional allegation that "various wedding decorations and related items partially obscured the visibility of the step" is contradicted by plaintiff's affidavit testimony.

[2] *See generally Rich v. Tite-Knot Pine Mill,* 245 Or 185, 191-92, 421 P2d 370 (1966).

[3] *See Rich,* 245 Or at 191-92.

only duty was to warn plaintiff of *concealed dangers* of which they had knowledge;[4] and (b) defendants had met the applicable standard of care as a matter of law because the step was not a concealed danger. Plaintiff then filed a cross-motion for partial summary judgment, contending that the undisputed facts established that she came on the property with the status of an *invitee* and was thereby entitled to be warned not merely of concealed dangers but of any *unreasonable risks of harm*.[5] She also maintained that the step was a concealed danger in any event so that, in failing to warn her of it, defendants had failed to meet the lower standard of care owed to a licensee. In their reply and response to plaintiff's cross-motion, defendants contended for the first time that, even assuming plaintiff had the status of an *invitee*, defendants nevertheless were entitled to summary judgment. The trial court agreed and, though it explicitly found that issues of fact existed as to plaintiff's status, it ruled that defendants had met the higher standard of care owed to an invitee as a matter of law and were therefore entitled to summary judgment. We agree.

Before reaching the merits, we address two preliminary matters that, according to plaintiff, require reversal of the trial court's ruling. Plaintiff first contends that issues of fact regarding her status as an invitee or licensee preclude an award of summary judgment to defendants. However, such issues of fact, if they exist, are not material here unless there is a triable issue regarding defendants' compliance with the higher standard of care owed to an invitee. If we (like the trial court) assume the view most favorable to plaintiff on the issue of her status (thereby viewing the facts in the light most favorable to the nonmoving party as required by ORCP 47 C) and conclude that there are no issues of fact regarding defendants' compliance with that higher standard of care, any factual disputes regarding plaintiff's status are not material and therefore do not prevent summary judgment.

Plaintiff also contends that the trial court based its ruling on a summary judgment motion that was never filed. In their original summary judgment motion, defendants

---

[4] *See Rich,* 245 Or at 191.

[5] *See Woolston v. Wells,* 297 Or 548, 557-58, 687 P2d 144 (1984).

argued only that they met the standard of care owed a licensee. It was not until their reply brief and response to plaintiff's cross-motion for summary judgment that defendants argued they were entitled to judgment even if plaintiff was an invitee. Plaintiff contends that the trial court's ruling on that basis was prohibited by our prior cases.

The trial court's ruling here did not arise in a manner analogous to the cases on which plaintiff relies. In *Hendgen v. Forest Grove Community Hospital*, 98 Or App 675, 677, 780 P2d 779 (1989), we held that the trial court could not grant summary judgment *sua sponte* on an emotional distress claim when the defendant had only moved for summary judgment on a negligence claim. In *Industrial Underwriters v. JKS, Inc.*, 90 Or App 189, 190, 750 P2d 1216 (1988), we held that a trial court could not indicate just before trial that it would grant summary judgment to one of the parties, allow that party to move orally for summary judgment, and then grant the motion, allowing the nonmoving party no opportunity to prepare a response.

The circumstances here are materially different from those and other cases in which we have held that summary judgment was improperly granted *sua sponte*.[6] Defendants here moved for summary judgment on the only claim at issue, negligence based on premises liability; the court merely based its grant of summary judgment on a variation of defendants' original argument that they had met the standard of care owed to plaintiff as a matter of law—a variation that defendants explicitly asserted in their reply. Indeed, the trial court, consistently with ORCP 47 C, was viewing the facts in the light most favorable to plaintiff by assuming that she was entitled to the higher standard of care owed to an invitee. Unlike our prior cases reversing *sua sponte* awards of summary judgment, notice was not a problem: Plaintiff

---

[6] *See Advance Resorts of America, Inc. v. City of Wheeler*, 141 Or App 166, 180, 917 P2d 61, *rev den*, 324 Or 322 (1996) (the trial court erred in granting summary judgment to the defendant city where the city had not moved for summary judgment); *Francis v. Eoff Electric Co.*, 127 Or App 632, 638-39, 873 P2d 1110, *rev den*, 319 Or 625 (1994) (the trial court erred in granting what amounted to summary judgment when only a motion to dismiss was made); *Harbert v. Riverplace Associates*, 114 Or App 80, 82-83, 834 P2d 476 (1992) (the trial court erred in granting summary judgment where no summary judgment motion had been filed).

argued in response to defendants' summary judgment motion that she was an invitee and that defendants had failed to meet even the lower standard of care owed to a licensee (thereby necessarily arguing that defendants had failed to meet the higher standard of care if it applied). All parties, then, addressed plaintiff's status and defendants' compliance with the concomitant standard of care; both of those issues were squarely before the trial court.

Accordingly, we turn to the standard of care owed to an invitee and address whether defendants complied with that standard as a matter of law.[7] *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984), generally describes the applicable standard:

> "In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise [due care] to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise that standard of care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm."

Accordingly, property owners are " 'liable to invitees only for conditions that create an unreasonable risk of harm to the invitee.' " *Andrews v. R.W. Hays Co.*, 166 Or App 494, 503, 998 P2d 774 (2000) (quoting *Jensen v. Kacy's Markets, Inc.*, 91 Or App 285, 288, 754 P2d 624, *rev den*, 306 Or 413 (1988)). This matter turns on whether, viewing the record most favorably to plaintiff, a reasonable trier of fact could find that the step on defendants' deck, which plaintiff did not see, presented an unreasonable risk of harm to plaintiff.

---

[7] Although plaintiff agrees as to the content of the standard of care owed an invitee, she nevertheless contends that the Supreme Court's decision in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17-18, 734 P2d 1326 (1987), somehow prevents us from deciding compliance with the standard of care as a matter of law. Plaintiff is incorrect. As we have held previously, *Fazzolari* did not supplant existing case law regarding premises liability. *Rex v. Albertson's, Inc.*, 102 Or App 178, 180-81, 792 P2d 1248, *rev den*, 310 Or 422 (1990). The obligations of a landowner to an invitee create a "special relationship" that takes the claim out of the general standards of common-law negligence and defines the standard of care. If a reasonable trier of fact could not impose liability for failure to comply with that standard of care, judgment must be granted to the defendant as a matter of law. *See id.; see also Andrews v. R.W. Hays Co.*, 166 Or App 494, 503, 998 P2d 774 (2000).

Two prior cases are instructive: *Hamilton v. Union Oil Company et al*, 216 Or 354, 339 P2d 440 (1959), and *Andrews*. In both cases, the plaintiffs tripped on steps that were held not to be "unreasonably dangerous" as a matter of law, despite their "deceptively level appearance." However, both cases suggest that collateral conditions *combining with* steps—poor lighting, slipperiness, past accidents—may present circumstances that a reasonable jury could find "unreasonably dangerous."

In *Hamilton*, the plaintiff tripped on a step in a service station. The step was three and one-half inches in height, had the same gray concrete surface both above and below, may have been dimly lit, and may have been covered with oil. *Hamilton*, 216 Or at 358-59. Liability was alleged against both the owner and the operator of the service station. *Id.* at 357. The Supreme Court affirmed judgment for the defendant owner. *Id.* at 363. Because the owner had no control over the lighting or oil on the floor, the only alleged "condition" over which the owner had control was a step with the same surface pattern on both levels, which the trial court found was not a defective condition as a matter of law. *Id.* at 363. The Supreme Court likewise affirmed the trial court's ruling allowing the questions of slipperiness and bad lighting to reach the jury as to the operator but withdrawing from the jury an allegation of negligence based on the fact that "the coloring or pattern of the floor [being the same above and below] gave a deceptively level appearance," *id.* at 359-60, because that alone did not create a defective condition, *id.* at 363-64.

In *Andrews*, the plaintiff tripped on a step in front of a convenience store. The step was one and one-half inches to two inches in height, and its surface was concrete above and asphalt below. 166 Or App at 496. We held that, without more (such as inadequate lighting, a slippery surface, or admissible evidence of prior similar accidents), "a step-down of 1-1/2" - 2" from a walkway to a parking lot, which, because of an actual or perceived similarity of color, had a 'deceptively level appearance,' " was not an unreasonably dangerous condition as a matter of law. *Id.* at 505.[8]

---

[8] Other precedents suggest that the fact that a step appears in a place that one would not ordinarily expect to find a step may be enough to make the step

The step at issue here was located in the middle of a backyard deck, was five to six inches in height, and was composed of two-by-four decking material both above and below. Plaintiff concedes that lighting had nothing to do with her fall, that the deck was dry and not slippery, and that the wedding decorations did not obscure her view. She notes that, before her fall, she noticed that the deck had two levels, at least on the left side.

Following *Hamilton* and *Andrews,* we hold that those facts are legally insufficient to impose liability on the defendant property owners. A step located in a place where steps normally may be found, or with indications in the surrounding area that steps are present, with a surface of the same appearance both above and below, with no deceptive lighting, not covered with slippery substances, and with no established history of causing injury, does not pose an unreasonable risk of harm giving rise to a concomitant duty to warn. The deck here was not slippery; it was not in an unexpected location; the lighting was adequate; there is no admissible evidence showing falls had happened before. Defendants' step did not possess any of the additional characteristics necessary to present this issue to a jury.

The trial court correctly granted summary judgment.

Affirmed.

---

unreasonably dangerous. *See Farley v. Portland Gas & Coke Co.*, 203 Or 635, 651-52, 655, 280 P2d 384 (1955) (citing with approval cases finding liability where a step was placed at the edge of a revolving door and where a step with a "deceptively level appearance" was located at a doorway); *see also Hamilton,* 216 Or at 362-63 (distinguishing *Farley*).