Argued and submitted on November 23, 2010, affirmed August 3, 2011

Keri HAGLER,
*Plaintiff-Appellant,*

*v.*

COASTAL FARM HOLDINGS, INC.,
a Delaware corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
080710811; A142965

260 P3d 764

Thomas C. Patton argued the cause and filed the briefs for appellant.

Janet M. Schroer argued the cause for respondent. With her on the brief was Hoffman, Hart & Wagner LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

ROSENBLUM, S. J.

## ROSENBLUM, S. J.

Plaintiff sustained injuries at the Coastal Farm and Supply hardware store in Oregon City when a post pounder fell and struck her foot. Plaintiff brought this action for negligence against defendant, Coastal Farm Holdings, Inc., the owner of the store. The trial court granted defendant's motion for summary judgment and subsequently entered judgment against plaintiff. On appeal, plaintiff argues that the summary judgment record contained sufficient evidence from which a reasonable juror could find defendant liable for causing plaintiff's injuries due to negligently displaying and maintaining the post pounders in a dangerous manner, and, in the alternative, that *res ipsa loquitur* should apply in this case. We affirm.

The undisputed facts in the summary judgment record are as follows: While shopping at defendant's store with three friends, plaintiff entered an aisle where post pounders were displayed on three levels of shelving.[1] As plaintiff proceeded down the aisle, she felt a sharp sudden pain in her foot and heard a loud clanging noise. She looked down to see a bruise and a bump already forming on her foot—she was wearing sandals—and a post pounder, which weighed either 13 or 16.55 pounds, clattering as it came to rest on the floor. Plaintiff incurred medical expenses as a consequence of the injuries to her foot, and she ultimately filed this action. She alleged in her complaint that defendant negligently failed to "properly place the post pounder, creating an unreasonably unsafe condition," failed to warn customers of the danger, and negligently placed a post pounder "on a high shelf such that they knew or should have known it constituted a hazard."

A photograph of the post pounder display was taken five to 10 minutes after the accident. It shows three flat, standard hardware store display shelves mounted one above the next, at heights of about eight inches, two feet, and three and a half or four feet, respectively. In the photo, post pounders

---

[1] A post pounder, also referred to as a "post hammer," is a tool used for driving fence posts into the ground. It consists of a steel pipe that is closed at one end and has two handles, one welded to each side of the pipe.

are displayed on all three levels of shelving.[2] Five post pounders are laid flat on the second shelf, with one stacked on top of two others. The post pounders are all somewhat longer than the depth of the shelf, so they protrude past the edge. The third shelf has a 3- to 5-inch-tall wire grate along the front edge to help secure merchandise. Additional post pounders are placed on the third shelf, parallel to the front of the shelf. At least one appears to be above the others, but it does not appear in the photo to be above the protective wire grate.

Prior to the accident, neither plaintiff nor any of her friends had seen the post pounder display, nor did anyone actually see the post pounder that hit plaintiff fall from the shelf. After plaintiff filed her lawsuit, however, her friend, Nivin, recalled in an affidavit:

"In looking at the display of post-hammers, I was surprised that all of them had not fallen. It appeared to me that they had stacked as many of them as possible in a very crowded space. * * * [They] were stacked two and three deep in a disorderly way, many of them sticking out; it was obvious to me that it was a very risky and dangerous way to display post-hammers."

In her deposition, plaintiff recalled that the post pounders "were sitting kind of weird, I guess." She also recalled that the post pounders were sticking out from the shelf by approximately a foot and a half, although later in the deposition she agreed that the photo—which shows the post pounders protruding by at most a few inches—was an accurate depiction of the display as it appeared on the day of the accident.

In his deposition, the assistant store manager who took the photo shortly after the accident, Dutton, stated that the photo accurately represented the regular condition of the post pounder display. When asked about store safety procedures, he stated that there were no specific store policies concerning the post pounder display, other than "[b]asically you put what you can on the shelves and then the rest went to the back," but that employees did walk the store aisles each

---

[2] Plaintiff conceded at the summary judgment hearing that she could not have sustained her injuries from one falling from the bottom shelf.

morning and regularly throughout the day to "make sure there was no safety hazards."

The store manager at the time of plaintiff's accident, who had worked for defendant from 1994 through 2007, explained, through deposition testimony, the store's safety procedures and policies, as follows:

> "We walked the store in the morning and evenings and that's every aisle. Anything that needed to be addressed was addressed. If it was something that was out of the norm to where it needed to be put on the shelf, it was done right then and there. If not, then it was put on the work list and we would follow up in the mornings. Normally a couple hours afterwards. We did short work lists every morning and every evening.
>
> "* * * * *
>
> "* * * We had specific safety meetings once a month with the safety committee. They write up minutes and that. And during mornings, we would have a quick meeting with who-ever opened the store and we would address—especially at this location because it was a newer location for us at the time, and we would address anything needed in the morning times, usually. And then we had ad meetings about once a week that the entire store met with in the evening times, most of the time. And we'd go over that and it would [be] an open forum for anybody to discuss anything like that."

The store manager did not recall whether the subject of the post pounder display had ever come up in any of those meetings. The store manager further explained that employees were trained and required to perform "basic housecleaning" as they regularly walked the aisles during their shift, including checking for items sticking out from the shelves in an unsafe manner and rearranging the displays as items were sold. In his 13 years of working for defendant, the store manager did not recall another post pounder ever falling off a shelf.

Defendant moved for summary judgment. At the initial hearing on the motion—at which plaintiff had only provided the photo and her own deposition as evidence—the

trial court reasoned that, in order to survive summary judgment, plaintiff was required to provide evidence that defendant was responsible for placing the post pounder in a dangerous position. Plaintiff was allowed time to produce additional evidence, but the trial court concluded, at a subsequent hearing, that the depositions of the store manager and assistant manager and the affidavit of Nivin were not ultimately helpful to plaintiff. After the second hearing, the court stated that "there's nothing in the record that would indicate that these would—the way these are stacked right now, they would fall on their own," and it concluded that a jury would not be able to determine that defendant's actions were the cause of plaintiff's injury without resorting to guesswork or speculation. On that basis, the trial court granted summary judgment, and plaintiff now appeals.

We will affirm a grant of summary judgment if we agree with the trial court that "there is no genuine issue as to any material fact and the moving party was entitled to a judgment as a matter of law." *O'Dee v. Tri-County Metropolitan Trans. Dist.*, 212 Or App 456, 460, 157 P3d 1272 (2007) (internal quotation marks and brackets omitted). That will be true if, in viewing the record in the light most favorable to the nonmoving party—here, plaintiff—and drawing all reasonable inferences in her favor, no objectively reasonable juror could return a verdict for plaintiff on the matter subject to the summary judgment motion. ORCP 47 C; *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). Plaintiff would have the burden at trial of producing evidence of defendant's alleged negligence; therefore, plaintiff has the burden of producing evidence on that issue on summary judgment. *O'Dee*, 212 Or App at 460-61.

Here, plaintiff argues that the evidence raised jury questions as to whether defendant's choice of how to display the post pounders created an unreasonable risk of harm and thus gave rise to liability for negligence, or alternatively, that the doctrine *res ipsa loquitur* should apply to allow her claim to survive summary judgment. Defendant argues that plaintiff has not adduced sufficient facts to support a claim in negligence, that plaintiff's *res ipsa loquitur* argument is unpreserved, and thus, that summary judgment was appropriate.

We begin with plaintiff's claim that defendant could be held liable in negligence on the evidence presented because defendant's decision to display the post pounders in a way that they could fall and injure someone presented an unreasonable risk of harm to its invitees. *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984), generally describes the standard of care owed to invitees:

> "In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise [due care] to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise that standard of care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm."

Accordingly, property owners are "liable to invitees only for conditions that create an unreasonable risk of harm to the invitee." *Glorioso v. Ness*, 191 Or App 637, 643, 83 P3d 914, *rev den*, 336 Or 657 (2004); *Jensen v. Kacy's Markets, Inc.*, 91 Or App 285, 288, 754 P2d 624, *rev den*, 306 Or 413 (1988). The matter at hand thus turns on whether, in viewing the record most favorably to plaintiff, a reasonable trier of fact could find that the display of post pounders presented an unreasonable risk of harm to plaintiff. If not, summary judgment for defendant on that theory was appropriate as a matter of law. *See Glorioso*, 191 Or App at 643, 643 n 7.

We turn for guidance to cases applying the above-stated standard to "slip and fall" incidents—*i.e.*, claims arising from the plaintiff-invitee sustaining injury from slipping or tripping on an item on the defendant's floor. Perhaps most directly on point, in *Lee v. Meier & Frank Co.*, 166 Or 600, 602, 114 P2d 136 (1941), the plaintiff's decedent tripped over a pillow in a department store aisle, causing fatal injuries, and the plaintiff brought suit against the defendant for negligence. The plaintiff produced no evidence that the defendant placed the pillow in the aisle, knew that it was there, or, in the exercise of reasonable diligence, should have known it was there, but nonetheless contended that the "real" issue in the case " 'was whether or not the pillow display, as so maintained by the defendant itself, was dangerous and unsafe.' " *Id.* at 608-09.

The Supreme Court held for the defendant, reasoning that "[i]t is a matter of common observation" that stores stack or shelve merchandise in order to conserve space. *Id.* at 610. "The utility of the arrangement is great and the possibility of harm to anyone is negligible." *Id.* Recognizing that "[e]veryone knows that when objects are piled on top of one another the upper one may tumble down if jarred," the court concluded that it could "not conceive how such an arrangement could support a charge of negligence" absent additional evidence that the store failed to properly maintain the display by permitting pillows to remain in common passageways after timely notice of their presence or by failure to "make visits at reasonable intervals to the place so as to acquaint himself with its conditions." *Id.* Because the plaintiff could adduce no such evidence, the plaintiff had failed to state a claim against the store. *Id. See also Rex v. Albertson's, Inc.*, 102 Or App 178, 181, 792 P2d 1248, *rev den*, 310 Or 422 (1990) (addressing the plaintiff's claim that the defendant was negligent for not wrapping blueberry containers in cellophane to prevent slip-inducing blueberry from dropping to the floor, and declining to adopt the theory that "an occupier of premises who places foreign objects where they might fall on the floor is liable, because it *should have known* of the risk that an object would be on the floor" (emphasis in original).

In this case, plaintiff urges that the question of whether defendant placed the *particular* post pounder that hit the plaintiff in a manner such that it would fall is irrelevant. Rather, she asserts that evidence exists to support an inference that defendant's manner of display could have resulted in *any one* of the post pounders falling and causing injury, and thus defendant could be held liable for displaying the post pounders in a dangerous manner.[3] In viewing the record in the light most favorable to plaintiff, we conclude that no such reasonable inference exists.

We emphasize that, as explained in *Lee*, defendant cannot be found liable on a premises liability theory for displaying merchandise on shelving unless it can be shown that

---

[3] Consequently, we understand plaintiff also not to be arguing that defendant failed in exercising due care to discover any unreasonable risk posed by the particular post pounder that fell. *See Woolston*, 297 Or at 557-58.

the particular manner of display created an unreasonable risk to customers. Here, both plaintiff and defendant agree that the photograph in evidence shows both the general condition of the post pounder display as well as its condition shortly after plaintiff's injury. Plaintiff, however, argues that the photograph depicts an unreasonable danger to customers. Plaintiff also relies on Nivin's affidavit provided in response to the summary judgment motion.

We agree with the trial court that that evidence is legally insufficient to impose liability on defendant. The photograph as described does not indicate that any greater risk was posed by this display of post pounders than that posed by any other display regularly encountered by customers of a hardware store. Nor would any of the other evidence in the record assist a jury in concluding that the display created an unreasonable risk to customers. *See Lee*, 166 Or at 610. Rather, the photograph shows post pounders that are laid flat and fit appropriately on the shelves, protruding only by a few inches and not in a manner that a person could easily and inadvertently knock one off the shelf. The photo does not show, as Nivin's affidavit suggests, that the post pounders were overstocked, overstacked, or protruding so far that they would pose unreasonable harm to customers. Given plaintiff's own admission that the photograph accurately portrayed the display, no reasonable juror could find Nivin's recollection and opinion reliable.[4] *Cf. Brant v. Tri-Met*, 230 Or App 97, 104-05, 213 P3d 869 (2009) (the plaintiff's deposition testimony that her bus driver braked "suddenly" and caused her to fall was insufficient to create a genuine issue of fact with regard to the driver's negligence, where there was no evidence of the circumstances of the braking, and footage from the bus onboard camera was inconsistent with the plaintiff's theory of the case).

---

[4] Plaintiff's own testimony that the post pounders appeared to protrude more than a foot over the edge of the shelving is similarly undermined by the photograph, which shows the post pounders to protrude by, at most, two to three inches past the edge of the shelf. *Cf. Knepper v. Brown*, 182 Or App 597, 611, 50 P3d 1209 (2002) (citing *Henderson-Rubio v. May Dept. Stores Co.*, 53 Or App 575, 585, 632 P2d 1289 (1981) (no genuine issue of material fact is raised where clear inconsistency exists between the plaintiff's earlier and later statements in opposition to summary judgment and the plaintiff makes no effort to explain the inconsistency)).

Furthermore, like the plaintiff in *Lee*, plaintiff here has not adduced additional evidence that defendant failed to properly maintain the display. To the extent plaintiff argues that defendant failed to engage in such maintenance, plaintiff relies on an answer given by defendant's assistant manager, Dutton, at his deposition, that, to his knowledge, the store did not have any guidelines about how often the post pounders should be checked to see if customers had moved them.

Dutton also stated, however, that other employees walked the aisles looking for hazards such as items sticking out from shelves in an unsafe manner. The store manager also testified that employees assigned to the department where the post pounders were displayed were trained and required to look for hazards such as items sticking out of shelves, perform basic housecleaning, and rearrange the displays if necessary throughout the day. Nothing in the record contradicts those statements. Nor is there any evidence of prior incidents of post pounders falling. *See Glorioso*, 191 Or App at 645 (fact that no evidence existed of prior injuries caused by a deck step supported the conclusion that the step did not possess conditions necessary to conclude it was unreasonably dangerous). On this record, the fact that the store did not have specific policies in place for how to display post pounders, or guidelines for how often the display should be checked is legally insufficient for a jury to find that defendant's maintenance of the display was inadequate. Thus, consistent with the court's decision in *Lee*, we conclude that plaintiff failed to produce evidence that the manner of the display or its maintenance possessed characteristics that would allow a jury to conclude that the display was unreasonably dangerous.

Plaintiff argues, however, that *res ipsa loquitur* should apply such that negligence and causation can be presumed in this case. Before reaching that argument we must first address defendant's contention that plaintiff failed to preserve a *res ipsa loquitur* theory below. During plaintiff's argument at the initial summary judgment hearing, the trial court asked whether, in order for plaintiff to succeed, there would need to be at least some factual basis to show the cause of how the post pounder fell. Plaintiff's counsel responded:

"Well I don't think so. I think, you know, *it's sort of leaning towards res ipsa loquitur*. The way that they are stacked is inherently unsafe. I mean, the way they are stacked speaks for themselves. They are inherently dangerously stacked. If you put more than, you know, a handful—if you have them there in such a way that there's more than just one of them on the shelves or there's not room for them to sit a foot apart, it is inherently unsafe to stack them vertically."

(Emphasis added.) Replying to that argument, the trial court stated that "this is not a *res ipsa* case, because that would require that the only finding would be that * * * the only potential finding can—could be is that the defendant was responsible, because the defendant was in exclusive control at all times; right?" Reasoning that, even if the evidence "create[d] a question of fact about it being an unreasonably dangerous stacking, it still has to be the fault of the store," and that there is no indication in the facts that anyone knew how the post pounder came to be stacked in a way it could fall, the court stated that "I think [that] takes us out of the *res ipsa* ball park * * *." Plaintiff's counsel responded:

> "*Perhaps I should not be bringing up—raising the specter of res ipsa*, but I do think that that is—you know, essentially what my argument is that they are the ones that chose to—chose how to display this * * *."

(Emphasis added.) Defense counsel then responded as to why, in his view, *res ipsa loquitur* is inapplicable to this case.

In now arguing that plaintiff did not preserve a *res ipsa loquitur* argument for appeal, defendant points to the preceding colloquy as containing the only mention of the doctrine made by plaintiff in any of the proceedings before the trial court, and argues that plaintiff's statement that "[p]erhaps I should not be * * * raising the specter of *res ipsa*" was a subsequent abandonment of that argument, preventing her from raising it on appeal.

"An issue is preserved for appellate review if the trial court has had the opportunity to identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Amador*, 230 Or App 1, 9, 213 P3d 846 (2009), *rev den*, 347 Or

533 (2010) (internal quotation marks omitted). The preservation rule is a practical one, and in a close case, will turn on whether the court concludes on the particular record in that case that the policies underlying the rule—procedural fairness, judicial economy, and full development of the record—have been met. *State v. Parkins*, 346 Or 333, 340-41, 211 P3d 262 (2009). In *Parkins*, the defendant had presented his argument to the trial court ambivalently, but the Supreme Court held that it was adequately preserved, because it was clear from the record that the opposing party had had a meaningful opportunity to address the issue, and the trial court had had an opportunity to resolve it. *Id.* at 337-41.

Similarly, here, plaintiff identified the doctrine of *res ipsa loquitur* to the trial court as being possibly applicable in this case and applied that doctrine to the facts. The court and plaintiff engaged in a colloquy concerning the doctrine, and the court made what could be considered some conclusions as to its applicability. Defense counsel recognized that plaintiff was raising *res ipsa loquitur* as an issue in the case, and responded as to why, in defendant's view, that doctrine was inapplicable. Thus, we are satisfied that defense counsel had a meaningful opportunity to address the issue, and the trial court had a meaningful opportunity to rule on it. Plaintiff's *res ipsa loquitur* argument was adequately preserved.

Turning to the merits, plaintiff's alternative argument does not aid her in this case. *Res ipsa loquitur* is a rule of circumstantial evidence that permits a jury to infer both causation and negligence if the kind of harm that occurred " 'more probably than not would not have occurred in the absence of negligence on the part of the defendant.' " *Hammer v. Fred Meyer Stores, Inc.*, 242 Or App 185, 190, 255 P3d 598 (2011) (quoting *McKee Electric Co. v. Carson Oil Co.*, 301 Or 339, 353, 723 P2d 288 (1986)). Before an inference of negligence or causation will be permitted, however, a plaintiff must establish "(1) that there is an injury, (2) that the injury is of a kind which ordinarily does not occur in the absence of someone's negligence, and (3) that the negligence that caused the event was more probably than not attributable to a particular defendant." *Id.* at 190-91 (internal quotation marks omitted).

Here, the parties do not dispute that the injury was of a kind which ordinarily would not have occurred in the absence of negligence, thus, we must only address whether the negligence was more probably than not attributable to defendant. In *Hammer*, we recently explained that *res ipsa loquitur* is generally not applicable in cases where the harm-causing instrumentality is a piece of merchandise ordinarily handled or manipulated by customers in a store, because in such cases, a "store owner's control of the instrumentality is so nonexclusive that a liability-inference is not probable." *Id.* at 195-96 (addressing but rejecting the defendant's argument that *res ipsa loquitur* was inapplicable where shelf in store fixture collapsed, causing injury to a customer, because "[n]either the evidence nor common sense suggests that customers ordinarily handled or manipulated the shelves"); *see also, e.g.*, *Lee*, 166 Or at 603; *Rex*, 102 Or App at 182. In this case, it cannot be inferred that the negligence was attributable to defendant, because customer ability to access the merchandise rendered defendant's control over the post-pounders nonexclusive. Thus, *res ipsa loquitur* is inapplicable here.

Affirmed.