132 September 12, 2013 No. 40

IN THE SUPREME COURT OF THE
STATE OF OREGON

Keri HAGLER,
*Petitioner on Review*,

*v.*

COASTAL FARM HOLDINGS, INC.,
a Delaware corporation,
*Respondent on Review*.

(CC 0807-10811; CA A142965; SC S059895)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 5, 2012; resubmitted January 7, 2013.

Thomas C. Patton, Portland, argued the cause and filed the brief for petitioner on review.

Janet M. Schroer of Hart Wagner, LLP, Portland, argued the cause and filed the brief for respondent on review. With her on the brief was Marjorie A. Speirs.

Travis Eiva of The Corson & Johnson Law Firm, Eugene, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

LANDAU, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
  * Appeal from Multnomah County Circuit Court, Eric L. Dahlin, Judge pro tempore. 244 Or App 675, 260 P3d 764 (2011).

**LANDAU, J.**

In this personal injury action, plaintiff alleges that she was injured as she walked down the aisle of defendant's store and a heavy item of merchandise fell on her foot. She did not see the item fall, nor did she see how it was shelved before it fell. She nevertheless contends that the store was negligent, because the item would not have fallen had it been properly shelved. The trial court entered summary judgment for defendant, concluding that plaintiff had produced no evidence that defendant knew or reasonably should have known of any danger in the shelving of its product. The Court of Appeals affirmed. For the reasons that follow, we also affirm.

The relevant facts are not in dispute. Plaintiff and three friends shopped in defendant's store. They walked down an aisle where post pounders were shelved. A post pounder is a roughly 15-pound metal tool consisting of a long steel pipe that is closed at one end and has two handles, one welded to each side of the pipe. The tool is used for driving fence posts into the ground. As plaintiff walked down the aisle, she felt a sudden pain in her foot and heard the clatter of a post pounder as it hit the floor. Neither plaintiff nor her friends observed the post pounder fall, how that particular post pounder had been shelved before the fall, or which shelf it had fallen from.

Defendant's assistant store manager, Dutton, took a photograph of the shelved post pounders approximately five to 10 minutes after the accident. The photograph shows post pounders set on three levels of shelving, at heights of about eight inches, two feet, and three and a half to four feet, respectively. The first and lowest level contains a row of five large post pounders arranged flat on the shelf and perpendicular to the shelf wall so that the ends point out from the shelf. The post pounders are all slightly longer than the depth of the shelf, so they protrude a few inches past the edge. Further down the first shelf sit about eight smaller post pounders oriented the same way but stacked two high. The second shelf contains five post pounders laid flat and perpendicular to the wall, with one stacked on top of two others. On the third and highest shelf, additional

post pounders lie flat but parallel to the wall, guarded at the shelf front by a protective wire grate.

Plaintiff initiated this action for negligence against defendant. Plaintiff alleged that defendant breached its duty of care that it owed to her as a business invitee in four particulars:

"a.   In negligently hiring, training, [and] supervising employees and operations at the store, so as to prevent the improper placement of post pounders;

"b.   In failing to properly place the post pounder, creating an unreasonably unsafe condition;

"c.   In failing to properly warn customers of the dangerous condition created by improperly placed post pounders; and,

"d.   In placing a post pounder on a high shelf such that [defendant] knew, or should have known in the exercise of reasonable care, that it constituted a hazard."

During discovery, defendant's assistant store manager, Dutton, explained in his deposition that the photo that he had taken shortly after the accident accurately represented the regular condition of the post pounder display. Dutton also explained that, although the store had adopted no safety procedures specific to the display of post pounders, it did have general safety policies, including walking the aisles each morning and periodically throughout the day to check for safety hazards, conducting monthly safety meetings, and discussing emerging safety issues as needed in its weekly advertising meetings.

Defendant's store manager also explained in his deposition that the store had a total of 15 safety procedures and policies:

"We walked the store in the mornings and evenings and that's every aisle. Anything that needed to be addressed was addressed. If it was something that was out of the norm to where it needed to be put on the shelf, it was done right then and there. If not, then it was put on the work list and we would follow up in the mornings. Normally a couple of hours afterwards. We did short work lists every morning and every evening.

"*****

"We had specific safety meetings once a month with the safety committee. They write up minutes [at] that. And during mornings, we would have a quick meeting with whoever opened the store and we would address—especially at this location because it was a newer location for us at the time, and we would address anything needed in the morning times, usually. And then we had ad meetings about once a week that the entire store met with in the evening times, most of the time. And we'd go over that and it would [be] an open forum for anybody to discuss anything like that."

The store manager further explained that all employees were trained to perform "basic housecleaning" as they walked the aisles, including checking for merchandise sticking out from the shelves in an unsafe manner. They were instructed to reshelve any such items. The manager stated that he could not recall whether the subject of post pounder shelving had ever come up at any of those meetings. He also said that, in his 13 years of working for defendant, he did not recall another post pounder ever falling off a shelf.

Plaintiff, in her own deposition, testified that she did not see the post pounder fall. She said that she did not know from which shelf it fell. When asked how the accident happened, she replied that, "[m]aybe there was somebody on the other side of the wall, and it rattled it. Honestly, I'm not really sure. They were sitting kind of weird, I guess." She said that, just before the post pounder fell, though, she saw, "out of the corner of [her] eye," the post pounders lying on the shelves. She agreed that the photo that Dutton took accurately portrayed how the post pounders were stacked on those shelves.

Defendant moved for summary judgment. It argued that plaintiff, to prevail, must offer evidence that defendant either knew or should have known that the post pounder that fell on plaintiff's foot had been shelved in a dangerous manner. In this case, defendant argued, plaintiff can offer no such evidence. Plaintiff's response was two-fold: First, she argued that her testimony that the post pounders were "sitting kind of weird, I guess," coupled with the photograph of the shelves that Dutton took shortly after the accident,

sufficed to "create a question of fact as to whether the display was unsafe." Second, in the alternative, plaintiff asked for a continuance to conduct further discovery.

At the hearing on defendant's motion, the trial court expressed concern that plaintiff had not offered any evidence that defendant knew or should have known that the post pounder that injured her had been placed negligently on the shelving. The court noted that the only evidence in the summary judgment record consisted of plaintiff's testimony and the photograph that Dutton had taken. "It appears," the court explained, "that simply is not enough." The court noted that, even assuming for the sake of argument that the photograph could be viewed as illustrating dangerously placed post-pounders,

"there is still a question of who is responsible for placing them in the place where they are. And based on the record in front of me, I think it's all speculation about who was responsible. You know, it's possible that management or the employees stacked them that way. It's possible that another customer had walked by, picked a few of these up, put them back in a haphazard manner or what not. And they are—there just simply is not anything in the record that would tell me who is responsible for that."

In response to the trial court's remarks, plaintiff argued that she actually did not need to show how the post pounder was shelved or how it fell. According to plaintiff, "I think, you know, it's sort of leaning towards *res ipsa loquitur*. The way that they are stacked is inherently unsafe. I mean, the way they are stacked speaks for themselves. They are inherently dangerously stacked."

The trial court rejoined that it was difficult to understand how the doctrine of *res ipsa loquitur* applied, given that there was no evidence that defendant controlled how the post pounder was stacked on the shelf:

"Here, you know, you never know who the person was who came by and stacked it this way. It could have been a store employee or it could have been a customer—could have been a customer, there a couple of minutes before your client arrived there. And, I mean, that I think takes us out of the *res ipsa* ball park, because we still have to have—we still

have to have a showing that the defendant was responsible for stacking it this way."

Plaintiff responded that, "[p]erhaps I should not be bringing up—raising the [spector] of *res ipsa*, but I do think that that is—you know, essentially what my argument is that they are the ones that chose to—chose how to display this." Defendant asserted that "this whole *res ipsa* is exactly what he [plaintiff's counsel] is trying to do, and it's exactly what he cannot try to do for the reason that you have identified."

The trial court ultimately ruled that, although it was inclined to grant defendant's summary judgment motion, it would instead postpone deciding the motion and give plaintiff time to conduct additional discovery.

Plaintiff conducted additional discovery and then submitted a supplemental response to defendant's summary judgment motion. In that supplemental response, plaintiff offered an affidavit of Mark Navin, one of the three friends who accompanied plaintiff to the store. Navin's affidavit stated that,

> "[i]n looking at the display of post-hammers, I was surprised that all of them had not fallen. It appeared to me that they had stacked as many of them as possible in a very crowded space. There were three shelves of them, at heights of about eight inches, two feet, and three and a half to four feet. The post-hammers were stacked two and three deep in a disorderly way, many of them sticking out; it was obvious to me that it was a very risky and dangerous way to display post-hammers."

Defendant replied that Navin's testimony added no new facts to the record, only his speculation and opinion about the way the post pounders had been shelved.

The trial court granted defendant's summary judgment motion. The court concluded that plaintiff had provided no evidence of how the post pounder had been shelved or how it fell:

> "there's still an issue of, well, if this post pounder that fell, came from the third shelf, the question is, well, who put it there? It could have been another customer that just came by and did it. And it could have been the plaintiff, herself,

that actually picked it up and dropped it. Or it could have been a store employee who in his regular duties stacked it that way. All of those were equally possible. And there's nothing that gets us over the hurdle that would get you to a jury."

Plaintiff appealed, arguing that the trial court erred in requiring evidence that defendant knew or should have known that a particular post pounder had fallen into the aisle. According to plaintiff, defendant should be held liable for generally displaying the post pounders in a dangerous manner, regardless of how the particular post pounder that injured her had fallen from the shelf. In that regard, plaintiff argued, Navin's affidavit was dispositive. In any event, plaintiff argued, the doctrine of *res ipsa loquitur* applies, relieving her of any obligation to prove how the particular post pounder fell into the aisle.

Defendant argued that a store owner is not liable for injuries from a falling object unless there is evidence that the owner knew or should have known that the object had fallen, and plaintiff offered no such evidence in this case. Defendant asserted that, even if plaintiff were correct that liability could arise out of displaying post pounders in a dangerous manner, there was no evidence of dangerous display in this case. Defendant relied on the photograph of the shelves, which all parties agreed to be accurate, and which shows the post pounders lying flat on the shelves in a manner that—as a matter of Newtonian physics—precluded them from falling without some human assistance. As for plaintiff's invocation of *res ipsa loquitur*, defendant argued first that the issue was not preserved and second that, in any event, the doctrine does not apply in the absence of evidence that the accident more likely than not would not have occurred without negligence on the part of defendant.

The Court of Appeals affirmed. *Hagler v. Coastal Farm Holdings, Inc.*, 244 Or App 675, 260 P3d 764 (2011). Relying on this court's decision in *Lee v. Meier & Frank Co.*, 166 Or 600, 114 P2d 136 (1941), the court first concluded that a store is ordinarily not liable for injuries from fallen merchandise in the absence of evidence that the store knew or should have known that the merchandise had fallen to the

floor. *Id.* at 682. The court found no such evidence in this case. *Id.* In response to plaintiff's contention that, irrespective of whether defendant knew of should have known whether a particular post pounder had fallen into the aisle, the court held that there is no evidence of a dangerous display. *Id.* at 683. The court discounted Navin's affidavit as his own speculation about the dangerous nature of the display. *Id.* It also noted that his opinion was based on a physical description of the display that was plainly contradicted by the photograph that all parties agreed accurately depicted the condition of the shelves at the time of the accident. *Id.* The court rejected plaintiff's reliance on *res ipsa loquitur.* It explained that the rule does not apply to cases in which harm is caused by merchandise that is capable of being handled by customers as well as the owner. "In this case," the court explained, "it cannot be inferred that the negligence was attributable to defendant, because customer ability to access the merchandise rendered defendant's control over the post pounders nonexclusive." *Id.* at 687.

On review, plaintiff first argues that the Court of Appeals erred in relying on *Lee,* which she insists is distinguishable, because it involved an item of merchandise—a fallen pillow—that is different from the 15-pound post pounder at issue in this case. According to plaintiff, she should not be required to show that defendant knew or should have known that a particular post pounder fell into the aisle; rather, it should suffice if she produces evidence that defendant displayed the merchandise in an unsafe manner. In this case, she argues, the evidence shows that defendant displayed "stacks of heavy industrial merchandise on elevated shelving," which Navin's affidavit characterized as dangerous. That, she insists, was adequate to create a jury question about whether the display was dangerous. Plaintiff next argues that the Court of Appeals misapplied the doctrine of *res ipsa loquitur* when the court held that it applies only if defendant had exclusive control of the post pounders. According to plaintiff, the manner in which the post pounders were displayed was, in fact, subject to defendant's exclusive control.

Defendant argues that the Court of Appeals correctly relied on *Lee,* which defendant says is controlling. Plaintiff's

reliance on *res ipsa loquitur*, defendant contends, is both unpreserved and unavailing. Defendant relies on what it characterizes as plaintiff's concession to the trial court—that, "[p]erhaps I should not be * * * raising the specter of *res ipsa*"—in asserting that the doctrine was not adequately preserved. As for why the doctrine is unavailing, defendant contends that the rule applies only when evidence makes it more probable than not that the accident would not have occurred but for the negligence of the defendant. In this case, defendant contends, there is simply no such evidence.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. That standard is met when, viewing the facts in the light most favorable to the nonmoving party, no reasonable juror could return a verdict for that party. *Id.*; *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). The nonmoving party—in this case, plaintiff—has the burden of producing evidence on any issue raised in the motion as to which it would have the burden of persuasion at trial. ORCP 47 C. The question in this case is whether plaintiff met that burden.

As we have noted, plaintiff alleges that defendant was negligent in displaying its post pounders in an unreasonably dangerous manner. Under Oregon negligence law,

> "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

*Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). In this case, the parties do invoke such a particular standard of conduct that applies to owners of land who invite others onto the premises. *Garrison v. Deschutes County*, 334 Or 264, 272, 48 P3d 807 (2002) (business invitee rule a "special duty").

In general, possessors of land must "make their property reasonably safe for their invitees." *Hughes v. Wilson*,

345 Or 491, 497, 199 P3d 305 (2008). That duty requires possessors to exercise due care to discover conditions on the premises that create an unreasonable risk of harm to invitees or warn them of the risk so as to enable them to avoid the harm. *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984). The role of the possessor, however, "is not that of an insurer against accidents upon the premises even as to persons whom they have invited to enter." *Starberg v. Olbekson*, 169 Or 369, 373, 129 P2d 62 (1942). And the mere fact that an invitee was injured on the premises does not, by itself, give rise to an inference of negligence. *Id*. at 373-74.

This court has applied those general principles in a number of cases involving injuries resulting from items or substances that fell to the floor of business premises. The cases consistently hold that the business owner's duty to invitees applies to "dangers of which he knows or in the exercise or reasonable care should have known." *Mickel v. Haines Enterprises, Inc.*, 240 Or 369, 371-72, 400 P2d 518 (1965).

For example, in *Diller v. Safeway Stores, Inc.*, 274 Or 735, 548 P2d 1304 (1976), the plaintiff was injured when he slipped on ice and water on the floor of the defendant's store near a section containing lettuce that was packed in ice. He sued the store for negligence. The evidence showed that the store had not swept the floor for an hour before the accident. *Id*. at 737. There was also evidence that the store knew that the manner in which it displayed the lettuce sometimes resulted in ice and water getting on the floor and making the floor slippery. *Id*. The jury returned a verdict for the plaintiff. *Id*. The trial court, however, granted a judgment for the defendant notwithstanding the verdict. *Id*. This court affirmed, explaining:

> "In this case there was no evidence that at any time prior to the accident any of [the] defendant's employees actually knew that ice and water had been spilled on the floor. Moreover, the fact that the store's log book showed that the floor had not been swept for over an hour before the accident does not raise an inference that [the] defendant should have known the water or ice was there and should have removed it in the exercise of reasonable diligence. It is just as reasonable to assume that the substance was spilled

immediately before the accident as it is to assume it was spilled substantially earlier."

*Id.* at 738; *see also Weiskopf v. Safeway Stores*, 271 Or 630, 631, 533 P2d 347 (1975) (liability of market for injury resulting from customer slipping on substance left on a floor mat turned on whether "the substance was on the mat a sufficient length of time that defendant should have known of its presence and removed it in the exercise of reasonable care").

Another example—arguably closer in point to this case—is *Lee*. In that case, Katie Anderson visited the Meier & Frank department store. 166 Or at 602. She walked by a display rack of pillows that had been constructed around one of the pillars that supported the floor above. The base of the rack was approximately one foot above the floor. Around it was a protective railing of eight or nine inches in height. Displayed in the rack was a pile of pillows, stacked between four and five feet high. *Id.* at 602-03. A witness testified that "the pillows on that rack were piled unusually high." *Id.* at 602. Another witness observed customers handling the pillows that had been stacked above the railing and that, whenever a customer would reach for a pillow, others would be dislodged and fall to the floor. *Id.* at 607-08. When Anderson walked by the display, one of the pillows had fallen to the floor, and she stumbled over it. *Id.* at 603. No one, however, had seen that particular pillow before the fall. *Id.*

Anderson later died of her injuries, and her estate initiated an action for negligence against Meier & Frank. *Id.* at 602. The case was tried to a jury, but the trial court granted Meier & Frank's motion for an involuntary nonsuit at the close of the evidence. *Id.* at 602. On appeal, the plaintiff argued that the fact that no one had seen the pillow fall into the aisle or knew how long it had been there was not dispositive. As the plaintiff phrased it, "[t]he real issue in this case was whether or not the pillow display, as so maintained by the defendant itself, was dangerous and unsafe." *Id.* at 608-09.

This court affirmed the dismissal of the plaintiff's negligence claim. *Id.* at 602. The court began by explaining that the liability of a business owner for injuries to patrons from objects on the floor generally depends on evidence that

the owner knew or should have known about the fallen object. *Id.* at 604-05. Quoting from the *Restatement of Torts* § 343, the court stated that, "'[a] possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he * * * knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk.'" 166 Or at 605. Turning to the facts of the case before it, the court observed that "there is no evidence in the record which shows that the defendant had any knowledge of the pillow's presence in the aisle before Mrs. Anderson was tripped up by it." *Id.*

Turning to the plaintiff's argument that the pillow display itself was dangerous, the court explained:

> "It is evident * * * that [plaintiff] believes that a pile of pillows arranged in such a manner that an upper pillow may fall if a lower one is removed renders the pile dangerous. * * * If a pile of pillows four or five feet high, resting upon a firm base and leaning in the rear against a solid post, is an object of danger, we shudder to think of the danger that lurks in every self-service grocery store with its rows of canned goods piled high. We recall that the base of the defendant's rack was surrounded by a guard rail several inches high. It is a matter of common observation that every store, in order to conserve space, arranges its merchandise in piles. The utility of the arrangement is great and the possibility of harm to anyone is negligible. Such displays and arrangements are commonly regarded as free of danger. A pillow, fluffy and light in weight as it is, is almost harmless compared with the goods upon the counters, tables and display racks of grocery, crockery, variety and hardware stores. Everyone knows that when objects are piled on top of one another the upper one may tumble down if jarred, unless a means can be found of overcoming the law of gravity. We cannot conceive how such an arrangement could support a charge of negligence unless the merchant permitted objects to remain in the common passageways after he had received timely notice of their presence there, or failed to make visits at reasonable intervals to the place so as to acquaint himself with its conditions."

*Id.* at 609-10.

*Lee* thus represents an application of the general rule that a landowner must exercise due care to discover conditions on the premises that create an unreasonable risk of harm to invitees and to warn invitees of those risks. There was, the court said, no evidence that Meier & Frank knew or should have known that the pillow over which Anderson had tripped had fallen. 166 Or at 605. Moreover, there was no evidence that Meier & Frank knew that its display of pillows—which the court characterized as "light in weight" and "almost harmless," resting on "a firm base and leaning in the rear against a solid post"—posed a danger to customers. *Id.* at 609-10.

The court's explanation for its rejection of the plaintiff's argument about the dangerous nature of the display went further than that, however. It suggested that, because of the "utility" of arranging merchandise—including "grocery, crockery, variety and hardware stores"—and the small likelihood of any harm to customers, the court "could not conceive how such an arrangement could support a charge of negligence unless the merchant permitted objects to remain in the common passageways" after receiving notice that the objects had fallen. *Id.* at 610.

That suggests that the manner in which a merchant shelves merchandise could never support a claim of negligence in the absence of evidence that the merchant knew that merchandise had actually fallen into common passageways. And that suggestion is incorrect. The likelihood that a particular display will cause harm to others will depend on the circumstances of each case—among them, the nature of the goods and the manner in which they are shelved. To the extent that *Lee* suggests a hard-and-fast rule that there can be no claim for negligent display of merchandise, the suggestion conflicts with the general rule of landowner liability that we have described, and we disavow it.

With the foregoing principles in mind, we return to the record in this case and whether it creates a genuine issue of material fact about whether defendant knew or should have known that the manner in which it shelved its post pounders posed a danger to customers. At the outset, we observe that there is a complete absence of evidence that the

defendant knew that the manner in which that post pounder had been shelved posed a danger to any customer. There was, in fact, no evidence that the particular post pounder had been shelved dangerously. At best, there is evidence in the form of the photograph of the shelving taken some minutes after the incident, which plaintiff acknowledged accurately portrayed what she saw out of the corner of her eye before the post pounder fell on her foot. But, as we have noted, that photograph shows all of the post pounders lying flat on the shelves. Those on the second shelf were lying flat and perpendicular to the wall, with one stacked on top of two others. Those on the third shelf were also lying flat, but parallel to the wall, guarded at the shelf front by a protective wire grate. Plaintiff does not explain, and we do not understand, how—given the length and weight of the post pounders, and the fact that their handles prevented them from rolling—the photograph demonstrates shelving that posed an unreasonable risk to customers.

Plaintiff insists that she did provide evidence that defendant should have known that the post pounder was at risk of falling, based on the affidavit of Navin, who testified that he had observed the post pounder display and was "surprised that all of them had not fallen," because of the "very risky and dangerous way" that defendant displayed its merchandise. We are not persuaded.

Navin's affidavit expressed only his nonexpert opinion and speculation about the condition of the display and the risk of harm that it posed. *See Simpson v. Hillman*, 163 Or 357, 363, 97 P2d 527 (1940) (It is "fundamental that negligence cannot be predicated upon mere conjecture, guesswork, or speculation."). Moreover, to the extent that his affidavit could be taken as a factual description of the display, that description is plainly at odds with the photograph that plaintiff agreed was an accurate depiction of the shelving at the time of the accident.

Plaintiff argues that, even if she failed to offer evidence sufficient to support an inference that defendant was negligent, the doctrine of *res ipsa loquitur* applies and renders the absence of such evidence immaterial. According to plaintiff, the trial court and the Court of Appeals erred in

requiring evidence of defendant's exclusive control of the harm-causing instrumentality.

*Res ipsa loquitur* is a Latin expression—meaning "the thing speaks for itself"—that refers to a rule of circumstantial evidence. *McKee Electric Co. v. Carson Oil Co.*, 301 Or 339, 348, 723 P2d 288 (1986). In appropriate cases, it allows a factfinder to infer negligence on the part of the defendant if an "accident is of a kind which ordinarily would not have occurred in the absence of the defendant's negligence, even though it is impossible to determine the specific way in which the defendant was negligent." *Watzig v. Tobin*, 292 Or 645, 648, 642 P2d 651 (1982).

A party invoking the doctrine is not required to establish that the instrumentality that caused the harm was in the exclusive control of the defendant. *Pattle v. Wildish Construction Co.*, 270 Or 792, 797, 529 P2d 924 (1974). But the party must establish that the harm "more probably than not would not have occurred in the absence of negligence on the part of the defendant." *McKee Elec. Co.*, 301 Or at 353 (quoting *Watzig*, 292 Or at 649). That determination cannot be based on speculation and conjecture and cannot be drawn from probabilities that are evenly balanced. *Watzig*, 292 Or at 652 n 6.

In this case, defendant contends that plaintiff failed to preserve an assertion that *res ipsa loquitur* applies. We conclude that, although plaintiff did not invoke the doctrine with the sort of clarity that might be desired, she did so adequately to serve the essential purposes of the preservation rule. As we have noted, at the hearing on defendant's summary judgment motion, plaintiff did explain to the trial court that her argument was "sort of leaning toward *res ipsa loquitur*." The trial court proceeded to explain why it thought that the doctrine did not apply. And defendant expressed agreement with the trial court, asserting that "this whole *res ipsa* is exactly what he is trying to do, and it's exactly what he cannot try to do for the reason that you have identified." It thus appears that all parties were fairly apprised of the argument and given an opportunity to respond to it, and the trial court was given the opportunity to address the matter as well. That is all that the rule of preservation requires.

*See State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (preservation rule exists to ensure fairness to parties and to provide the trial court an opportunity to avoid ruling in error).

Turning to the merits of the issue, as we have noted, proof of exclusive control of the harm-causing instrumentality is not required, as we have noted. Nevertheless, plaintiff is required to supply evidence that plaintiff's injury is the sort that, more likely than not, was caused by negligence on the part of defendant. And, in this case, plaintiff did not supply that evidence. As the trial court correctly observed, there is no basis for determining that the injury in this case occurred because defendant shelved the post pounders in an unsafe manner or failed to discover that the post pounders had been stacked by someone else in an unsafe manner. The post pounder that fell and injured plaintiff could have fallen because of the action of another customer. On this record, it is not possible to say that the manner in which defendant shelved the post pounders is the more likely explanation for plaintiff's injury. Accordingly, *res ipsa loquitur* is inapplicable.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.