DeVORE, J.
*612 This appeal involves a dispute over attorney fees in an action on an automobile insurance policy. Plaintiff sued defendant for personal injury protection (PIP) and uninsured motorist (UM) benefits under his automobile insurance policy with defendant after he was involved in a motor vehicle accident with an uninsured driver. The only issues remaining in the case after court-annexed arbitration and a subsequent settlement between the parties as to damages concerned plaintiff's claims for attorney fees under ORS 742.061.[1] The trial court granted summary judgment to defendant on those claims and dismissed the case.
On appeal, plaintiff challenges the trial court's rulings that (1) plaintiff was not entitled under ORS 742.061(2) to attorney fees on his PIP claim because of an agreement between defendant and plaintiff's treating medical provider, Accident Care Specialists (ACS), in which ACS reportedly agreed to waive plaintiff's medical bills with respect to any potential PIP claim; and (2) plaintiff was not entitled under ORS 742.061(3) to attorney fees on his UM claim because defendant's "safe harbor" letter was *613 sufficient to exempt it from payment of fees. We agree with plaintiff that the court erred in both respects. Accordingly, we reverse and remand.
I. FACTS
The pertinent historical and procedural facts are undisputed. Plaintiff was injured in a motor vehicle accident with an uninsured driver on June 20, 2014. At the time of the accident, plaintiff was insured by defendant under an Oregon automobile policy that provided statutorily required PIP and UM coverage. On July 2, 2014, after receiving notice of the accident, defendant sent plaintiff's counsel a letter stating that it had "accepted coverage" for plaintiff's UM claim, that it would "now focus [its] efforts on liability issues and damages related to this claim," and instructing plaintiff of the steps he needed to take to submit a claim. The letter also included the following paragraph:
"Once we have sufficient information that supports your client's claim, we will make every attempt to reach a fair agreement on the amount of Uninsured or Underinsured Motorist benefits due under the policy. If *466 for some reason we are not able to reach an agreement on the amount due, your client may request that [defendant] submit the claim to a third-party arbitrator who can determine the amount of benefits to which your client is entitled. Keep in mind that the arbitrator's decision is final and cannot be disputed or appealed."
(Emphasis added.)
Plaintiff sought medical treatment for his injuries at ACS and incurred medical expenses totaling $6,530.65. Defendant did not pay those expenses. On September 23, 2014, defendant sent a letter to plaintiff's counsel, acknowledging plaintiff's treatment at ACS and stating, in part:
"You are advised that [defendant] and [ACS] (including its owner, Alexis Lee) have reached an agreement that will resolve any potential PIP claim associated with bills issued to your client by [ACS] associated with your client's care related to this motor vehicle accident. [ACS] maintains that any and all treatment that has or will be performed will be reasonable, necessary, and proper. However, [ACS]
*614 will not submit these bills for payment by [defendant] as part of any PIP claim. Moreover, [ACS] will take no collection action against your client for payment of bills associated with this claim."
Plaintiff subsequently filed an action against defendant in circuit court; in his amended complaint, he alleged a claim for PIP benefits in the amount of $6,530.65 for the medical expenses he incurred with ACS, and a claim for UM benefits, which included the same medical expenses, as well as noneconomic damages not to exceed $10,000, and lost wages in the amount of $3,284.40. He also sought attorney fees pursuant to ORS 742.061. The court ordered the case transferred to arbitration, where plaintiff recovered damages, as well as costs and attorney fees.[2] Defendant appealed the arbitration award, seeking trial de novo on all issues of law and fact. The parties subsequently reached a settlement agreement as to damages, leaving the attorney fee issues to be resolved by the trial court.
Defendant then filed a motion for summary judgment on the question of plaintiff's entitlement to attorney fees as to both his PIP and UM claims.[3] With respect to PIP, defendant argued that, because plaintiff's PIP claim only included medical bills from ACS and, pursuant to an agreement between ACS and defendant, those medical bills "were completely waived with respect to any PIP claim," plaintiff's PIP claim did not provide a basis for attorney fees under ORS 742.061(2). In support of that argument, defendant included as exhibits its September 23, 2014, letter described above and a declaration from Lee, ACS's owner. Lee's declaration stated, in part:
"For purposes of any potential PIP claim associated with this loss, the medical bills for the treatment rendered by ACS for [plaintiff] is being waived for reasons unrelated to the subject litigation. Although bills will be issued and provided to Plaintiff for services, ACS is electing as its sole *615 and exclusive remedy to recover amounts from the tortfeasor and/or his/her insurance carrier."
As to attorney fees associated with plaintiff's UM claim, defendant argued that, although that claim remained viable (because ACS had waived its medical bills only for purposes of a PIP claim), plaintiff was not entitled to fees because defendant timely provided plaintiff with a "safe harbor" letter-referring to its July 2, 2014, letter to plaintiff's counsel-which, under ORS 742.061(3), precludes an award of fees.
Plaintiff responded that his PIP claim "exists as a matter of law" regardless of the agreement between defendant and ACS because his "right to PIP benefits is contractual and statutory, and cannot be undone by a third party agreement." Plaintiff submitted evidence that ACS had presented all of its *467 bills for plaintiff's medical treatment to defendant's PIP adjuster for payment, and that, according to plaintiff, established his PIP claim. In addition, plaintiff argued that, in fact, his medical bills were not waived, and, as proof, he attached Lee's deposition testimony. In response to questioning about the meaning of her earlier declaration that plaintiff's medical bills were being "waived," Lee testified, "I'm not sure what it means that it's waived. Because there is an outstanding balance that-for services I provided for, that [plaintiff] would have to pay." Among other things, she also testified that she understood that "the patient is ultimately responsible for treatment that was rendered, that they received."
As to the UM claim, plaintiff disputed that defendant's purported "safe harbor" letter was sufficient under ORS 742.061(3) to exempt defendant from responsibility for attorney fees. Plaintiff asserted that the letter did not satisfy the requirement of ORS 742.061(3)(b) that "[t]he insurer has consented to submit the case to binding arbitration."
The trial court granted summary judgment in favor of defendant, denying fees on both claims. First, as to PIP, the court apparently agreed that, due to the agreement between defendant and ACS to "waive" plaintiff's medical bills as to PIP, there was no PIP claim to which attorney fees could *616 attach.[4] Second, with regard to UM, the court concluded that defendant's "safe harbor" letter substantially complied with the requirements of ORS 742.061(3) and, therefore, defendant was exempt from paying plaintiff's attorney fees. The court issued a judgment dismissing the case.
Plaintiff appeals, assigning error to the court's rulings on summary judgment for defendant denying recovery of attorney fees on both his PIP and UM claims.
II. DISCUSSION
Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C ("The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law."). That standard is satisfied when, viewing the facts in the summary judgment record and all reasonable inferences that may be drawn from them in the light most favorable to the nonmoving party, "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." Id. ; Robinson v. Lamb's Wilsonville Thriftway , 332 Or. 453, 455, 31 P.3d 421 (2001). The nonmoving party has the burden of producing evidence on any issue raised in the motion as to which it would have the burden of persuasion at trial. ORCP 47 C; Hagler v. Coastal Farm Holdings, Inc. , 354 Or. 132, 140, 309 P.3d 1073 (2013).
A. Attorney Fees on the UM Claim
We begin with plaintiff's entitlement to attorney fees on his UM claim.[5] Under ORS 742.061(1), a plaintiff in an action on an insurance policy is generally entitled to *617 attorney fees if "the plaintiff's recovery exceeds the amount of any tender made by the defendant." However, ORS 742.061(3) provides a potential exception to that rule with regard to claims for UM benefits. It provides:
"Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:
"(a) The insurer has accepted coverage and the only issues are the liability of the *468 uninsured or underinsured motorist and the damages due the insured; and
"(b) The insurer has consented to submit the case to binding arbitration."
In effect, ORS 742.061(3) describes a "safe harbor" for the insurer against a plaintiff's claim for attorney fees if the insurer satisfies the statutory criteria. Whether an insurer's safe harbor letter satisfies the statutory criteria is a legal question. Daniels v. Allstate Fire and Casualty Co. , 289 Or. App. 698, 700, 412 P.3d 249, rev. den. , 362 Or. 794, 416 P.3d 1097 (2018).
In this case, the issue is whether the court correctly concluded that defendant's July 2, 2014, letter satisfies subsection (3)(b), which requires that "[t]he insurer has consented to submit the case to binding arbitration."[6] In plaintiff's view, the trial court erred because, by its plain text, the letter is "nothing more than an invitation to Plaintiff to ask for arbitration" (emphasis added), whereas the statute requires the insurer's "consent" to arbitrate. Defendant responds that its letter "substantially complies" with the statutory requirements and plaintiff did nothing to indicate that he did not understand it; therefore, the court did not err. We agree with plaintiff.
Again, the key paragraph in the July 2, 2014, letter from defendant's counsel to plaintiff's counsel states:
*618 "Once we have sufficient information that supports your client's claim, we will make every attempt to reach a fair agreement on the amount of Uninsured or Underinsured Motorist benefits due under the policy. If for some reason we are not able to reach an agreement on the amount due, your client may request that [defendant] submit the claim to a third-party arbitrator who can determine the amount of benefits to which your client is entitled. Keep in mind that the arbitrator's decision is final and cannot be disputed or appealed."
(Emphasis added.) Plaintiff is correct that, according to its plain meaning, the emphasized sentence merely instructs plaintiff that he may ask that his claim be submitted to a third-party arbitrator if he and defendant are unable to reach agreement on the amount of UM benefits due under plaintiff's policy. See Webster's Third New Int'l Dictionary 1929 (unabridged ed. 2002) (defining the transitive verb "request" to mean, in this context, "to ask (as a person or an organization) to do something" or "to ask for permission or opportunity (to do something) : express a wish or desire (to do something)" (boldface in original) ). By contrast, the term "consent" means "to express a willingness (as to accept a proposition or carry out a particular action) : give assent or approval : AGREE-usu. used with to ." Id. at 482 (boldface, uppercase, and italics in original). In short, informing plaintiff that he may ask defendant to send the case to arbitration does not express defendant's willingness, assent, or agreement to do so. Nothing in defendant's letter obligates defendant to agree to plaintiff's request-if one is made-that the parties arbitrate the dispute.
Defendant counters that, considered "as a whole," the letter nonetheless satisfies the statutory criteria. Defendant posits that, because the letter also states that defendant had "accepted coverage" for plaintiff's UM claim, and it would "now focus [its] efforts on liability issues and damages," it cannot plausibly be construed to allow defendant to "later deny coverage for the claim or later revoke its offer to arbitrate"; thus, as the trial court correctly concluded, it "substantially complies" with ORS 742.061(3). We are not persuaded.
*619 As just discussed, defendant's letter does not actually "offer to arbitrate." Instead, it merely invites plaintiff to request arbitration. The other statement about "accept[ing] coverage" does not necessarily relate to the insurer's consent to arbitrate. The *469 insurer could accept coverage while insisting on a jury trial. The same is true as to the statement about limiting the issues to damages and fault of the uninsured motorist. The insurer could agree to limit issues but refuse to arbitrate them. The statute states the several requirements of subsection (3) in the conjunctive. Thus, each requirement must be satisfied to trigger its safe harbor protection. See, e.g. , Thompson v. TLAT, Inc. , 205 Or. App. 518, 525-26, 134 P.3d 1099 (2006) (Brewer, J., dissenting) ("Multiple statutory requirements stated in the conjunctive generally must coexist to create a defined circumstance."). As the Supreme Court has explained, "No attorney fees will be awarded if, within six months of the filing of the proof of loss, the insurer states in writing that it accepts coverage, that the only remaining issues are the liability of the underinsured motorist and the amount of damages due the insured, and that it consents to binding arbitration." Zimmerman v. Allstate Property and Casualty Ins. , 354 Or. 271, 273, 311 P.3d 497 (2013) (emphasis added). In other words, we cannot assume that, if defendant's letter satisfies the first two requirements of ORS 742.061(3), it also satisfies the third.
Defendant is correct that both we and the Supreme Court have held that an insurer's safe harbor letter need not mimic the precise words of the statute. But that principle does not save defendant's letter. For example, in Zimmerman , the insurer's safe harbor letter did not use the word "consent," but declared that the insurer was " 'willing to submit to binding arbitration of the claim.' " 354 Or. at 275, 311 P.3d 497 (emphasis added). The Supreme Court concluded that the insurer's wording was sufficient to invoke the safe harbor because, although it did not track the exact wording of the statute, it nonetheless "adequately expressed [the defendant's] consent to submit to binding arbitration." Id. at 293, 311 P.3d 497. Here, however, defendant's letter does neither. That is, it does not track the language of the statute, and it does not convey defendant's willingness to arbitrate the case *620 in the event of a disagreement between the parties. Instead, it conveys nothing about defendant's commitment in that regard. The only thing it expresses is plaintiff's ability to seek arbitration. Thus, unlike in Zimmerman , the letter cannot be understood to convey defendant's unconditional offer to arbitrate.
Defendant also contends that Robinson v. Tri-Met , 277 Or. App. 60, 370 P.3d 864 (2016), rev. den. , 361 Or. 886, 403 P.3d 763 (2017), supports a favorable reading of its letter. There, we rejected the plaintiff's argument that the insurer's safe harbor letter was ineffective because it failed to indicate that the liability of the uninsured motorist was one of the remaining issues to be decided, as ORS 742.061(3)(a) specifies. We concluded that, although ORS 742.061(3)(a)allows an insurer to reserve for dispute both fault and damages, it does not require the insurer to do so. Id. at 66-67, 370 P.3d 864. In so holding, we followed the Supreme Court's lead in Zimmerman , which held that, given the " 'obvious purpose of the statute to provide an incentive for insurers to settle claims,' " an insurer's decision to concede fault at trial-after it had earlier sent a fully compliant safe harbor letter-did not remove it from the statute's protection. Robinson , 277 Or. App. at 67, 370 P.3d 864 (quoting Zimmerman , 354 Or. at 293, 311 P.3d 497 ). On this issue, Robinson stands only for the proposition that, even if an insurer's safe harbor letter fails to contain all of the statutory details, the exception is still available if the letter instead "narrow[s] the legitimate issues favorably to the insured ." 277 Or. App. at 67, 370 P.3d 864 (emphasis added). The circumstances here are not analogous. Thus, we reject defendant's argument that its safe harbor letter, alluding to arbitration, was effective because it "substantially complies" with ORS 742.061(3).[7]
*470 In sum, the trial court erred in concluding that defendant's letter complies with the requirement of *621 ORS 742.061(3)(b) that the insurer consent to submit the case to binding arbitration. Accordingly, we reverse and remand the ruling on summary judgment denying plaintiff's request for attorney fees related to his UM claim.
B. Attorney Fees on the PIP Claim
We turn to plaintiff's claim for attorney fees associated with his PIP claim. Plaintiff first contends that summary judgment was improper on this claim because there are disputed issues of material fact as to whether ACS actually waived plaintiff's medical bills, so that there was no PIP claim for which attorney fees could be awarded. As an initial matter, defendant responds that plaintiff's factual argument is "improper and should not be considered" because the parties stipulated that the issue of attorney fees would be resolved on summary judgment. Be that as it may, any stipulation between the parties to that effect would not be controlling. McKee v. Gilbert , 62 Or. App. 310, 320, 661 P.2d 97 (1983). As we explained in McKee , "a court is not empowered to render summary judgment where a genuine question of material fact appears. To do so would require the court to resolve an issue of fact, which is not appropriate in a summary judgment proceeding." Id . at 321, 661 P.2d 97 (citations omitted).
As for the merits of the issue, plaintiff contends, based on Lee's deposition, that "the evidence could allow a rational factfinder to determine that [ACS] did not in fact waive its bill as to Plaintiff, an issue upon which Defendant's [motion for summary judgment] relies." Defendant counters that Lee's declaration establishes that there is no factual dispute that ACS waived plaintiff's medical bills for purposes of PIP and that plaintiff is not responsible for payment of ACS's bills. Defendant further contends that Lee's subsequent statement in her deposition is consistent with her declaration.
Given that dispute, we consider Lee's two statements. The pertinent paragraph of Lee's declaration states:
"For purposes of any potential PIP claim associated with this loss, the medical bills for the treatment rendered by ACS for [plaintiff] is being waived for reasons unrelated to the subject litigation. Although bills will be issued and provided to Plaintiff for services, ACS is electing as its sole *622 and exclusive remedy to recover amounts from the tortfeasor and/or his/her insurance carrier."
Contrary to defendant's position, the declaration is ambiguous. Although ACS purports to "waive" its bills for the medical treatment it provided to plaintiff, it also intends to issue bills to plaintiff for that treatment. That appears inconsistent. Further, Lee declares that ACS elects to recover its bill from the tortfeasor or the tortfeasor's liability insurer. Lee does not explain how she would do that. Under ORS 87.555, a medical services provider may have a lien against a patient's settlement with a tortfeasor or judgment against a tortfeasor.[8] However, a medical services lien necessarily presupposes bona fide bills to the injured patient. When paid, a medical services lien affords the medical provider only an indirect recovery from a tortfeasor or liability insurer. By nature of a lien, the medical provider takes from the tort recovery that the injured patient has received or would receive. That would seem to be a plausible explanation for Lee's billing, but that would not mean that her bills, as against plaintiff, were truly waived.
*471 Significantly, Lee's deposition testimony creates added ambiguity when she was asked to explain each sentence in her declaration. When asked, "So what does it say, when it says the bills are being waived," Lee responded:
"I think that's why we're here. Because I'm not sure what it means that it's waived . Because there is an outstanding balance that-for services I provided for, that [plaintiff] would have to pay ."
*623 (Emphasis added.) Lee was asked, as to the second sentence, whether she meant that, rather than "going after" plaintiff, she would instead be looking to the liability carrier for payment.[9] Again she hedged, stating, "My understanding is that the patient is ultimately responsible for treatment that was rendered, that they received ." (Emphasis added.) When asked if ACS intended to pursue recovery of the bills from plaintiff personally, she testified that ACS had not taken any action in that regard, but would "hav[e] to decide what we are going to do in the future." One possible scenario, she said, would be to "send [plaintiff] the bills for-to submit to his health insurance." She further stated that she understood her declaration to mean that she was "waiving to not bill [defendant] PIP for this case, and will wait to collect on any tortfeasor, and will not go-will not bill [plaintiff], unless all of these other options are exhausted ," at which point she would "reevaluate [her] options." (Emphasis added.)
That evidence is sufficient to create a genuine issue of fact as to whether plaintiff remains obligated to pay ACS's bills and, consequently, has incurred medical expenses recoverable as PIP. See ORS 742.520(3) (providing that PIP benefits "consist of payments for expenses, loss of income and loss of essential services as provided in ORS 742.524"); ORS 742.524(1)(a) (2013), amended by Or. Laws 2015, ch. 5, § 4 (providing that PIP benefits as required by ORS 742.520 includes payments for "[a]ll reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance and prosthetic services incurred within one year after the date of the person's injury, but not more than $15,000 in the aggregate for all such expenses of the person").[10] Said another way, a reasonable factfinder could find that plaintiff has incurred medical expenses recoverable as PIP, given the *624 evidence that plaintiff remains ultimately responsible for payment for the medical treatment he received from ACS. In view of that factual issue, the trial court erred by granting defendant's motion for summary judgment on plaintiff's request for attorney fees related to his PIP claim.
To the extent that plaintiff's brief can be read to also argue that the trial court erred in concluding that there was no PIP claim because a third-party agreement between defendant and ACS cannot, as a legal matter , extinguish plaintiff's PIP claim, we decline to address it. Although, for jurisprudential reasons, we sometimes will address an issue that is not strictly necessary to resolve an appeal, we do not do so here for two reasons. First, plaintiff did not develop that argument in any meaningful way on appeal. See, e.g. , Cunningham v. Thompson , 188 Or. App. 289, 297 n. 2, 71 P.3d 110 (2003), rev. den. , 337 Or. 327, 99 P.3d 290 (2004) ("Ordinarily, the appellate courts of this state will decline to address an undeveloped argument."). Second, it is unclear from the record before us whether the attorney fees sought for plaintiff's PIP claim are duplicative of those associated with his UM claim, which, given the effect of our conclusion above that defendant's safe harbor letter was ineffective, plaintiff is entitled to receive. Thus, in this case, it is possible that the issue will not arise again on remand. Accordingly, we express no opinion on that question.
*472 III. CONCLUSION
The trial court erred in granting defendant's motion for summary judgment on plaintiff's requests for attorney fees associated with his UM and PIP claims. Accordingly, we reverse and remand.
Reversed and remanded.

ORS 742.061 provides, in part:
"(1) Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. ***
"(2) Subsection (1) of this section does not apply to actions to recover personal injury protection benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:
"(a) The insurer has accepted coverage and the only issue is the amount of benefits due the insured; and
"(b) The insurer has consented to submit the case to binding arbitration.
"(3) Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:
"(a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and
"(b) The insurer has consented to submit the case to binding arbitration."

The parties agree that the arbitration award includes some, if not most, of plaintiff's medical expenses incurred at ACS, but that is not apparent from the arbitration award or the summary judgment record.

In its motion, defendant indicated that the parties had agreed that the issue of attorney fees presented a question of law for the court to resolve on summary judgment.

Interestingly, however, the court also included in the judgment a provision stating, "In the event that [ACS] brings suit against Plaintiff to recover the medical expenses set out in Plaintiff's Complaint filed herein, [defendant] will indemnify Plaintiff for any recovery therein. [Defendant] will also provide defense counsel for any such suit brought by [ACS]."

Although plaintiff begins by discussing fees on the PIP claim, our conclusions with regard to fees on the UM claim make it more helpful to discuss that entitlement first.

The parties do not dispute that defendant's letter satisfies the requirement of subsection (3)(a) that "the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured." We recently held, however, in a decision issued after this appeal was argued, that the same language as was used here to address that requirement ("[w]e will now focus our efforts on liability issues and damages related to this claim") was insufficient because it did not demonstrate the insurer's commitment to limit the issues to only those questions. Daniels , 289 Or. App. at 700-01, 412 P.3d 249.

We reject without extended discussion defendant's argument that the trial court ruled correctly because plaintiff did not present any evidence that it did not understand or was confused by defendant's letter. Defendant cites no legal principle, nor are we aware of any, that would lead us to conclude that plaintiff's inaction or understanding overrides defendant's duty under the statute to express, in writing, its "consent[ ] to submit the case to binding arbitration." ORS 742.061 (3)(b). The issue turns on whether the insurer brings itself within the statutory exception, not whether the insured suspected that the insurer probably intended to do so.

In relevant part, ORS 87.555 provides:
"(1) Except as otherwise provided by law, whenever any person receives hospitalization or medical treatment on account of any injury, and the person, or the personal representative of the person after the death of the person, claims damages from the person causing the injury, then the hospital or any physician licensed under ORS chapter 677, physician assistant licensed under ORS 677.505 to 677.525 or nurse practitioner licensed under ORS 678.375 to 678.390 who treats the injured person in the hospital or who provides medical services shall have a lien upon any sum awarded the injured person or the personal representative of the person by judgment or award or obtained by a settlement or compromise to the extent of the amount due the hospital and the physician, physician assistant or nurse practitioner for the reasonable value of such medical treatment rendered prior to the date of judgment, award, settlement or compromise."

It is unclear who the liability carrier would be, given that the tortfeasor was an uninsured driver. And, it is unclear whether there would be a settlement or judgment against a tort defendant, because plaintiff had chosen to seek recovery for losses from his own UM insurer.

Consistent with the statutory requirements, plaintiff's policy with defendant provides with respect to PIP coverage that defendant "will pay to or on behalf of the injured person" "[a]ll reasonable and necessary expenses incurred within one year from the date of the accident. This covers medical, hospital, dental, surgical, ambulance, prosthetic services, x-ray and professional nursing services."